**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PEGASUS IMAGING CORPORATION,**
a Florida Corporation,

      **Plaintiff**

                           **Case No.**
    **vs.**                       **Division**

**NORTHROP GRUMMAN CORPORATION,**
a Delaware Corporation, and
**INTEGIC CORPORATION,** a Virginia
Corporation                    **JURY TRIAL DEMANDED**

      **Defendants**              **INJUNCTIVE RELIEF**
                                      **REQUESTED**

_____/

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF  AND DEMAND FOR JURY TRIAL

Plaintiff, Pegasus Imaging Corporation, a Florida corporation ("Pegasus" or "Plaintiff") hereby files this, its Complaint for Damages, Injunctive Relief  and Demand for Jury Trial against the Defendants, Northrop Grumman Corporation, a Delaware corporation ("Northrop") and Integic Corporation, a Virginia corporation ("Integic") (Northrop and Integic are referred to collectively herein as "Defendants") and alleges as follows:

## JURISDICTION, PARTIES AND VENUE

1.    This Court has federal question jurisdiction over this case or controversy pursuant to 28 U.S.C. Sections 1331 and 1338(a) by virtue of the United States Copyright Act, 17 USC Section 101, et seq. and the United States Trademark (Lanham) Act, 15 USC Section 1051, et seq.. The Court also has jurisdiction of this cause pursuant to 28

U.S.C. Section 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

2.      This Court has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. Section 1367 because the state law claims are so related to the original jurisdiction federal claims raised herein that they form a part of the same case or controversy under Article III of the United States Constitution.   Further, there exists no reason for this Court to decline to exercise supplemental jurisdiction under subsection (c) of 28 U.S.C. Section 1367.

3.      Plaintiff Pegasus is a Florida corporation, authorized to do business in Florida. Pegasus is in the business of creating, producing, selling, and distributing computer software that produces a full range of document imaging toolkits, forms processing technology, medical image compression SDKs, photo editing, compression imaging libraries, browser-based image viewers, video codecs and related technologies which provide or improve and enhance imaging software solutions. Plaintiff's principal place of business is, and at all material times referenced herein was, in Tampa, Hillsborough County, Florida.

4.      Defendant Northrop is a Delaware corporation and is an integrated enterprise consisting of approximately twenty-five (25) formerly separate businesses that cover the entire defense spectrum.   Northrop conducts most of its business with the United States Government, principally through the United States Department of Defense ("DoD").  Defendant Northrop does business throughout Florida and maintains numerous offices and/or agents in towns and cities throughout Florida, including, Tampa, Apopka,

Hurlburt Field, Melbourne, Orlando, Winter Park, St. Augustine, and Homestead. Defendant Northrop's principal place of business is in Los Angeles, California.

5.      Defendant Integic is a Virginia corporation which was acquired by Defendant Northrop in approximately 2005.  Integic is a systems integration provider that helps companies connect their legacy data systems to online business applications. Integic primarily serves governmental entities as well as health care and life sciences companies.  Through and with Northrop, Integic does business throughout the United States, including within Florida regarding projects for and facilitated through MacDill Air Force Base in Tampa, Florida, and created, or was the primary creator of, a paperless medical information system that will generate and maintain a comprehensive, lifelong, computer-based patient record for every soldier, sailor, airman, and marine their family members and others entitled to DoD military health care, known as the Composite Health Care System II ("CHCS II") and/or the Armed Forces Health Longitudinal Technology Application ("AFHLTA").  As further explained below, Integic entered into a license agreement with Pegasus for the use of Pegasus' ImagXpress software ("ImagXpress" or "Software") and used Pegasus' Software to help create and implement the CHCS II and/or AFHLTA.   Defendant Integic's principal place of business is in Los Angeles, California.

6.      This Court has personal jurisdiction of the Defendants Northrop and Integic pursuant to Fla. Stat. § 48.193, as follows:   (a) pursuant to Fla. Stat. § 48.193(1)(a), in that the Defendants and each of them are operating, conducting, engaging in, or carrying on a business or business venture in this state or have an office

or agency in this state; (b) pursuant to Fla. Stat. § 48.193(1)(b), in that the Defendants and each of them has committed a tortious act within this state; (c) pursuant to Fla. Stat. § 48.193(1)(f), in that the Defendants and each of them has caused injury to property within this state arising out of an act or omission by said Defendants outside this state and either the Defendants were engaged in solicitation or service activities within the state or products, materials or things processed, serviced or manufactured by the Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade or use; (d) pursuant to Fla. Stat. § 48.193(1)(g), in that the Defendants and each of them breached a contract in this state by failing to perform acts required by the contract to be performed in this state; (e) pursuant to Fla. Stat. § 48.193(2), in that the Defendants and each of them is engaged in substantial and not isolated activity within this state.  The Defendants and each of them have purposely availed themselves of the privilege of conducting activities within the state of Florida, thus invoking the benefits and protections of its laws, and there are adequate minimum contacts such that the Defendants and each of them should reasonably anticipate being haled into court in Florida.  Moreover, the exercise of jurisdiction over the Defendants and each of them would not offend traditional notions of fair play and substantial justice.

7.     Venue lies in the Middle District of Florida pursuant to 28 U.S.C. Sections 1400(a) and 1391 (b) (1), (2) and/or (3) and 1391 (c) as the Defendants "reside" in this district and are subject to personal jurisdiction in this district and division, the Defendants entered into contracts in this judicial district (including at least for Defendant Integic the contract/license with Pegasus), a substantial part of the acts or omissions giving rise to

the claims alleged herein occurred within this judicial district, and one or more of the
Defendants may be found in and are subject to personal jurisdiction in this district.

8.      The case or controversy is appropriately heard in the Tampa Division in
the Middle District of Florida pursuant to the Middle District Local Rule 1.02(c), as the
Tampa Division encompasses the counties having the greatest nexus with the causes of
action and claims of the Plaintiff alleged herein.    All conditions precedent to the
maintenance of this cause have been performed or have occurred.

## BACKGROUND AND FACTS
## SUPPORTING REQUESTED RELIEF

9.      Pegasus creates, develops, supports and licenses a number of computer
software programs.  One such program is Pegasus' "ImagXpress" program also known as
"Pegasus Development Toolkit (TOOLKIT)" (hereinafter "ImagXpress" or "Software"),
which is a comprehensive image processing toolkit designed for document imaging,
forms processing, photo and color imaging application development. Pegasus' Software
comprises and is an original work of authorship of Pegasus.   While delivering fast
processing speeds, ImagXpress offers extensive features such as image viewing,
thumbnail image support, editing, clean up, annotation, file format conversion,
compression, crop, rotate, multiple image scaling algorithms, scrollbar, auto size,
TWAIN scanning and printing capabilities. Pegasus first created and introduced
ImagXpress to the marketplace in approximately mid 1996.   The first version of
ImagXpress was known as "PhotoPro" and the name was changed to ImagXpress in late
1998.  Thereafter, Pegasus has enhanced and released upgrades to the Software via new
"versions" though prior versions are still widely used by individuals and entities which

have entered into licenses with Pegasus to be authorized users of the Software.

10.     On or before approximately July 24, 2003, and thereafter in 2003, 2004 and 2006 Defendant Integic (individually, through, or in concert with Northrop) downloaded from Pegasus' website and licensed a copy of Pegasus' ImagXpress Software pursuant to an accompanying license agreement, which Integic has acknowledged, a copy or exemplar of which is attached hereto as Exhibit "A" (the "License" or "License Agreement").

11.     While the Defendants have concealed and refused to provide Pegasus clear and meaningful information as to their use and application of Pegasus' Software, it now appears to Pegasus that at some point after downloading Pegasus' ImagXpress Software, unknown to Pegasus, Integic started using the Software to develop, implement and provide to the Department of Defense the Composite Health Care System II ("CHCS II") and/or the Armed Forces Health Longitudinal Technology Application ("AFHLTA") computer systems and applications, which are designed for the DoD's storage, retrieval and accessing of medical information for military personnel and their health care providers.

12.     On approximately March 21, 2005, while Integic was working on the creation and development of the CHCS II and/or AFHLTA applications and systems through the use of Pegasus' Software, Defendant Northrop acquired Integic through a transaction the exact details of which are unknown to Pegasus.  Since Northrop's acquisition of Integic, however, it is now apparent that Integic has operated and currently operates the "Federal Solutions" division of Northrop, is directly or indirectly a wholly-

owned subsidiary of Northrop and that Defendants Integic and Northrop have acted in concert regarding the activities constituting and/or furthering the unauthorized and improper use of Pegasus' ImagXpress Software, including through the interchanging use of the Defendants' employees, agents and facilities.  Northrop, through its direct or indirect ownership of Integic, and/or through other mechanisms such as interlocking officers or boards of directors, controls Integic, and through Northrop's agents and representatives, Northrop has assisted and promoted the improper and unauthorized use of Pegasus' Software and the other tortious and wrongful conduct committed against Pegasus as detailed herein.

13.    The use of Pegasus' Software in the CHCS II and/or AFHLTA systems continued during and after Northrop's acquisition of Integic.  Pegasus' Software is to this day an integral and vital part of CHCS II and AFHLTA and is believed to be regularly in use today in the CHCS II, AFHLTA and/or progeny applications and systems.

14.    Reports indicate CHCS II and/or AFHLTA system(s) is/are capable of and in fact meeting the demand of housing and making instantly accessible on a paper-less or virtual basis the medical records of the DoD's approximately nine million (9,000,000) patients/personnel from and to anywhere in the world.

15.    Upon information and belief the DoD has paid Integic and/or Northrop millions of dollars (potentially tens of millions of dollars) for initial design and testing of the system, with much of the remuneration being paid to Integic since the time Integic was acquired or affiliated with Northrop.

16.    While Integic, Northrop, or both, have charged the DoD and been paid

significant amounts for the development and creation of the CHCS II, AFHLTA and/or progeny applications and systems, using Pegasus' Software as a key component, Pegasus has been paid less than $4,000.00 by Integic (or Northrop) for the use of its Software. Pegasus has notified the Defendants of the wrongful conduct of the Defendants described and complained of herein and requested the Defendants cease and desist from continuing to violate Pegasus' rights.  The Defendants have failed and refused to honor or abide by Pegasus' requests.

<u>**COUNT I**</u>

<u>**BREACH OF LICENSE AGREEMENT**
**AGAINST INTEGIC CORPORATION**</u>

17.     Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 16 above as if set forth herein.

18.     On or before approximately July 24, 2003, and thereafter in 2003, 2004 and 2006 Defendant Integic (individually, through, or in concert with Northrop) downloaded Pegasus' ImagXpress Software and thereby licensed the Software for the limited use(s) as specified pursuant to an accompanying license agreement, which Integic has acknowledged, a copy or exemplar of which is attached hereto as Exhibit "A" (the "License" or "License Agreement").

19.     The License clearly indicates that regarding the Pegasus Software, Integic, as a licensee, was granted the right to use the Software (described therein as "Tool Kit runtimes") as part of Integic's software application or derivative works (referred to in the License as "Product").  The License further provides, however, that Integic was and is obligated to uphold the License and notify Pegasus immediately of any

changes in status or violations.

20.     Further, while Integic was granted a *limited, non-exclusive, right to use, reproduce, display, or otherwise distribute or transfer limited copies of* ToolKit runtimes, as an integral part of PRODUCT, in executable form only, such privilege existed only if and "***provided that***" twelve (12) enumerated conditions existed.

21.     The License provides that if *any* of the conditions were not applicable to Integic's circumstance or use (or could not be complied with), then Integic was required to obtain an expanded direct license from Pegasus in order to use the Software.

22.     It has now become apparent that the CHCS II and Armed Forces Health Longitudinal Technology Application uses and applications remove the Software from the License[1] under which Integic (or Northrop) could claim any right(s) and that one or more of at least five (5) of the stated and required conditions of the License (if not more) do, in fact, not exist with respect to Northrop's situation and use of the Software; namely:

> b.     The total annual PRODUCT(s) sales [derivative works, software application(s) and/or software installation(s)], which includes TOOLKIT runtimes, does not exceed two-hundred fifty thousand dollars ($250,000 US), in any year.

> c.     The use is for corporate in-house development project(s), purchase of the Pegasus development kit(s) grants a single site license with TOOLKIT runtime distribution up to 50 CPU's, within derivative work(s), within a single site (physical location).

---

[1] Among other things, while the Defendants have attempted to conceal facts from Pegasus and have refused to provide clear and direct information to Pegasus regarding their uses of Pegasus' Software, the Defendants have acknowledged in prior correspondence from their counsel that one or both of them has/have distributed in excess of Sixty-One Thousand (61,000) copies of the Pegasus' Software without obtaining an appropriate expanded license from Pegasus or paying any additional compensation to Pegasus for such distributions and uses.

f.      LICENSEE is not developing a client/server based solution which involves multiple servers or sites, or remote (off-site) clients.

g.      LICENSEE is not developing an internet/intranet server based solution which involves remote (off-site) clients (such as with Cabinet files, JAR files, COM objects, Active X controls, JAVA applets, or Browser plug-ins).

l.      LICENSEE includes a statement substantially similar to the following within derivative work's documentation and about box:   "This product contains portions of imaging code owned by Pegasus Imaging Corporation, Tampa, FL  (www.pegasusimaging.com).

23.     Accordingly, the existence of one or more of the above five (5) prohibited conditions and circumstances (if not more) have required and continue to require Integic to cease using the Software and contact Pegasus to acquire appropriate license(s) from Pegasus meeting Pegasus' approval and thereafter comply with same, including, but not limited to all financial and payment requirements.  Causing or allowing one or more of the above conditions to exist, failing to cease using Pegasus' Software and failing to obtain an appropriate license from Pegasus for the desired and apparent ongoing use of the Software, all constitute prior and ongoing breaches of the License by Integic.

24.     The License further expressly provides:

The license granted herein and any and all rights to use or maintain possession of TOOLKIT shall terminate immediately upon breach of any material provision of this Agreement.

Thus, in addition to constituting breaches of the License, Integic's actions have likewise terminated any license or grant of permission to Integic to use the Software.

25.     As a direct result of Defendant Integic's breach of the License agreement,

Pegasus has suffered numerous damages in the form of lost profit, revenues, lost license fees, including, but not limited to, the express right within the License agreement to charge up to ten (10) times the normal license price for the use of each unlicensed copy, and has had its Software distributed to unauthorized and unknown persons and entities, without compensation.

**WHEREFORE,** Plaintiff, Pegasus, demands judgment for damages against Defendant Integic Corporation, plus its attorneys' fees pursuant to the License Agreement, court costs, prejudgment interest, an accounting of licenses wrongfully distributed without authorization and demands trial by jury and such other and further relief as the Court deems proper.

## COUNT II

### COPYRIGHT INFRINGEMENT
### (Violation of 17 U.S.C. Section 101 et seq., The Federal Copyright Act)
### AGAINST INTEGIC CORPORATION AND
### NORTHROP GRUMMAN CORPORATION

26.    Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 16 above as if set forth herein.

27.    Pegasus authored the ImagXpress Software, and the Software contains and is material wholly original and is copyrightable subject matter under applicable law immediately upon creation.

28.    Since authoring and developing the Software, Pegasus has been and still is the sole proprietor of all its rights, title and interest in and to all copyrights in the Software.

29.    Further, on or about July 3, 2007, Pegasus registered its copyright in its

Software with the Register of the United States Copyright Office in Washington D.C. Copy of the copyright registrations numbered TXul-352-550 and TXul-361-085 are attached as composite Exhibit "B," thus providing Pegasus additional specific rights for the enforcement of its copyright and redress for any infringement thereof.  Pegasus has complied in all respects with the Copyright Act, 17 U.S.C. Section 101, et seq. (the "Copyright Act").

30.     While Pegasus permitted the Defendant Integic limited rights to use the Software pursuant to the License Agreement, Pegasus retained all ownership and copyright in and to the Software, and Integic's rights to use the Software were limited to the terms and conditions provided in the License.

31.     As described in paragraphs 19 through 23, Defendant Integic (at the direction of or in concert with Defendant Northrop) has and continues to use the Software in a manner which is outside of and in violation of the License.  Moreover, as described in paragraph 24, the License agreement between Pegasus and Integic terminated prior to the filing of this action, because of Integic's (and Northrop's) actions in violation of the License, thus terminating any arguable right of Integic (or Northrop) to continue using Pegasus' Software, and Defendants have been advised of such through counsel.

32.     Pegasus is further informed and believes and based thereon alleges that Defendant Northrop controlled, directed, supervised and profits from (and continues to control, direct, supervise and profit from) Integic and/or Integic's actions which have infringed and which are infringing upon Pegasus's copyrights in the Software.

33.     Pegasus is informed and believes and based thereon alleges that Integic

and Northrop have incorporated, or are in the process of incorporating Pegasus' Software into one or more existing or developing products or programs, derivative works, or portions thereof, which are identical or substantially similar to Pegasus' Software and infringes Pegasus' rights and copyrights in and to the Software. These and the other previously-mentioned similar acts of Integic and Northrop were done knowingly and willfully.

34.     The foreseeable and probable result of the aforesaid conduct of Integic and Northrop has been and will continue to be to deprive Pegasus of business and licensing of its Software, to deprive Pegasus of goodwill, and to injure Pegasus' relations with other potential licensors or authorized users of the Software, and to impose substantial expenses on Pegasus to counteract the aforesaid conduct.

35.     Pegasus is informed and believes and based thereon alleges that it has lost or will lose license revenue for its Software, and has sustained or will sustain damages as a result of Integic and Northrop's aforesaid wrongful conduct and their infringement of Pegasus' Software.

36.     Integic   and   Northrop   have   been   unjustly   enriched   by their copying, use, distribution, reproduction and marketing of the Software and works derived therefrom.

37.     Pegasus has notified Integic and Northrop that Integic and Northrop have misappropriated Pegasus' rights in the Software and has requested that Integic and Northrop cease such activities.  Integic and Northrop have refused and have continued to infringe upon Pegasus' rights.

38.     As of the date of this Complaint, Integic and Northrop continue to use Pegasus' copyrighted Software, to the detriment of Pegasus, without an appropriate license agreement in place, and contrary to Pegasus' request to cease such activities, thereby gaining substantial income and revenues for Integic and Northrop through the infringement of Pegasus' copyright.

39.     Pegasus believes that unless enjoined by this Court, Northrop and Integic intend to continue their course of conduct, and to wrongfully use, infringe upon, sell, license, and/or otherwise profit from Pegasus' Software and works derived therefrom. As a direct and proximate result of the acts of Integic and Northrop alleged above, Pegasus has already suffered irreparable damages and has sustained lost revenues, profits and/or monies.

40.     Pegasus has no adequate remedy at law to redress all of the injuries Integic and Northrop have caused and intend to cause by their conduct.  Pegasus will continue to suffer irreparable damages and to sustain lost revenues, profits and/or monies until Northrop and Integic's actions alleged above are enjoined by this Court.

41.     By means of the actions described herein, Northrop and Integic have infringed and will continue to infringe Pegasus's rights and copyrights in and relating to Pegasus's Software.

42.     Pegasus is entitled to an injunction restraining Northrop and Integic, and their agents and representatives and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

43.     Pegasus is further entitled to recover from Northrop and Integic the

damages it has sustained and will sustain as a result of Northrop and Integic's wrongful acts as herein described and alleged. The amount of such damages cannot be determined at this time. Pegasus is further entitled to recover from Integic and Northrop the gains, profits and advantages Northrop and Integic have obtained as a result of their wrongful acts as herein above described and alleged, as well as any available statutory damages or attorneys' fees provided by the Copyright Act.  Pegasus at present is unable to ascertain the full extent of the gains, profits, and advantages Integic and Northrop have obtained by reason of their aforesaid acts of copyright infringement.

**WHEREFORE,** Plaintiff, Pegasus, demands trial by jury of all issues so triable and judgment against Defendants Integic and Northrop as follows:

a.      Defendants Integic and Northrop each be held to have infringed Pegasus' copyrights and Pegasus' Software;

b.      That Defendants Integic and Northrop, their agents, employees, representatives and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing Pegasus' copyrights in its Software or continuing to use, copy, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the Software or to participate or assist in any such activity;

c.      That Defendants Integic and Northrop, their agents, employees and representatives and all other persons in active concert or privity or in participation with them, be enjoined to return to Pegasus any originals, copies, facsimiles or duplicates of the Software in their possession, custody or control;

d.      That Defendants Integic and Northrop be enjoined to recall from all distributors, wholesalers, jobbers, dealers, retailers, non- Pegasus licensed customers and distributors and all others known to Defendants any originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe any Pegasus copyright;

e.      That Defendants Integic and Northrop each be enjoined to deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles or duplicates of any work shown by the evidence to infringe any Pegasus copyright;

f.      That Defendants Integic and Northrop each be required to file with the Court    and    to    serve    on    Pegasus    within    thirty    (30)    days    after service of the Court's Order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which Defendants Integic and Northrop each complied with the Court's Order;

g.      That judgment be entered for Pegasus and against Defendants Integic and Northrop, for Pegasus' actual damages according to proof, and for any additional profits attributable to infringements of Pegasus' copyright, in accordance with proof;

h.      That judgment be entered for Pegasus and against Defendants Integic and Northrop, for statutory damages based upon Defendants' acts of infringement, as well as increased damages for knowing and willful infringement, as available pursuant to the Copyright Act. 17 U.S.C §101 et seq.;

i.      That Defendants Integic and Northrop each be required to account for all gains, profits and advantages derived from their acts of infringement or for their other

violations of law;

j.      That all gains, profits and advantages derived by Defendants Integic and Northrop from their acts of infringement be deemed to be in   constructive trust for the benefit of Pegasus;

k.      That Pegasus have judgment against Defendants Integic and Northrop for its costs and attorney's fees pursuant to 17 U.S.C. Section 505; and/or

i.      That the Court grant such other, further and different relief as the Court deems proper under the circumstances.

### COUNT III

### CONVERSION
### AGAINST INTEGIC CORPORATION AND
### NORTHROP GRUMMAN CORPORATION

44.     Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 16, paragraphs 19 through 24 and paragraphs 32 through 38 above as if set forth herein.

45.     Pegasus authored the ImagXpress Software, and the Software contains a substantial amount of material wholly original and owned by Pegasus.

46.     As detailed in the foregoing specifically re-alleged and incorporated paragraphs, Defendants have converted to their own use Pegasus' Software, which is lawfully the property of Pegasus, without the permission or authorization of Pegasus, through, at least, the CHCS II and Armed Forces Health Longitudinal Technology Application uses and applications.

**WHEREFORE** Plaintiff, Pegasus, demands judgment against Defendants,

Integic and Northrop, for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, plus Pegasus' costs, prejudgment interest, and demands trial by jury and any and all other relief at law or equity this Court deems appropriate.

## COUNT IV

### UNJUST ENRICHMENT
### AGAINST INTEGIC CORPORATION AND
### NORTHROP GRUMMAN CORPORATION

47.     Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 16, paragraphs 19 through 24 and paragraphs 32 through 38 above as if set forth herein.

48.     Pegasus authored the ImagXpress Software, and the Software contains a substantial amount of material wholly original and owned by Pegasus.

49.     Defendants obtained Pegasus' Software from Pegasus and accepted it knowingly and voluntarily.

50.     As detailed in the foregoing specifically re-alleged and incorporated paragraphs Defendants sold and/or distributed Pegasus' Software, through, at least, the CHCS II and Armed Forces Health Longitudinal Technology Application uses and applications in excess of or without authorization or permission granted by Pegasus.

51.     Defendants have and continue to derive a benefit from using, distributing and/or selling Pegasus' Software without compensating Pegasus for the Software. Plaintiff has no adequate remedy at law.

**WHEREFORE,** Plaintiff, Pegasus, demands judgment against Defendants,

Integic and Northrop, for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, plus Pegasus' costs, prejudgment interest, and demands trial by jury and any and all other relief at law or equity this Court deems appropriate.

## COUNT V

### VIOLATION OF FLORIDA TRADE SECRETS ACT AGAINST INTEGIC CORPORATION AND NORTHROP GRUMMAN CORPORATION

52.     Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 16, paragraphs 19 through 24 and paragraphs 32 through 38 above as if set forth herein.  This count is brought pursuant to the Florida Uniform Trade Secrets Act, Chapter 688 of the Florida Statutes.

53.     Pegasus authored the ImagXpress Software, and the Software contains material wholly original and owned by Pegasus.  The Software is built upon a source code, the human-readable form of instructions/ programming statements that were created or programmed by Pegasus to build the Software ("Source Code").

54.     The Source Code is a trade secret of Pegasus and Pegasus has maintained the confidentiality and secrecy of the Source Code through considerable expense and efforts.

55.     The Source Code derives independent actual and potential economic value from not being known, and not being readily ascertainable by proper means, to other persons and entities who can obtain economic value from its disclosure or use.

56.     Defendants Integic and Northrop obtained Pegasus' Software by

downloading it pursuant to a License which as more fully described in paragraphs 19 through 24 Defendants have violated and ignored.   Further, Pegasus is informed and believes and based thereon alleges that while in possession of Pegasus' Software, Integic and Northrop have accessed or obtained Pegasus' Source Code and are using or employing the Source Code and/or Software through the CHCS II and Armed Forces Health Longitudinal Technology Application uses and applications.

57.     As a result of the Defendants' misappropriation of Pegasus' trade secret Source Code, Pegasus has suffered damages for actual loss and the Defendants' unjust enrichment.

58.     The total loss to plaintiff cannot be accurately measured.  However, unless Defendants are enjoined from using Pegasus' trade secret Source Code and/or from disclosing the Source Code and associated information to others, Pegasus will suffer irreparable harm.

59.     For the harm and loss suffered by Pegasus, and for harm and loss that will continue, but for the intervention of this Court, Pegasus has no adequate remedy at law. If Defendants are permitted to continue using Pegasus' trade secret Source Code, Defendants will have profited by their own wrong, and Pegasus' trade secret may be further disseminated by Defendants, resulting in additional damages to Pegasus that are unpredictable and unending.

**WHEREFORE,** Plaintiff, Pegasus, demands against Defendants, Integic and Northrop:

a.     that a temporary injunction be issued restraining Defendants and any

agents, contractors and customers of Defendants, from directly or indirectly using for their own benefit the Source Code until Pegasus' right to a permanent injunction is determined;

b.      that a permanent injunction be ordered on final trial of this cause, enjoining Defendants and any of Defendants' agents, contractors and customers from directly or indirectly using the Source Code;

c.      that Pegasus be awarded judgment against Northrop and Integic for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, plus Pegasus' attorneys' fees and costs incurred pursuant to Chapter 688 of the Florida Statutes as well as costs of suit and prejudgment interest; and

d.      trial by jury and any and all other relief at law or equity this Court deems appropriate.

**COUNT VI**

**VIOLATION OF FLORIDA DECEPTIVE AND
UNFAIR TRADE PRACTICES ACT (FLA. STAT. Section 501.201 et seq.)
AGAINST INTEGIC CORPORATION AND
NORTHROP GRUMMAN CORPORATION**

60.    Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 16, paragraphs 19 through 24 and paragraphs 32 through 38 above as if set forth herein.

61.    At all relevant times, there was in effect the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, et seq. of the Florida Statutes.

62.    Section 501.204(1) provides, in pertinent part:

Unfair methods of competition, unconscionable acts

> or practices and unfair deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

63.     Defendants have engaged in business practices as recited above in paragraphs 19 through 24, paragraphs 32 through 38 and paragraphs 53 through 56 which are unlawful, unfair and deceptive acts and practices in violation of Section 501.201 et seq.

64.     Such business practices have caused Pegasus irreparable injury.  Unless enjoined by this Court, Defendants will continue engaging in these acts and practices to Pegasus' immediate and irreparable detriment.

65.     Pegasus has been damaged as a proximate result of Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act, and Pegasus is entitled to an injunction against such continued deceptive and unfair trade practices pursuant to Fla. Stat. Section 501.211 (1).

**WHEREFORE,** Plaintiff, Pegasus, demands against Defendants, Integic and Northrop:

a.     that a temporary injunction be issued restraining Defendants and any agents, contractors and customers of Defendants, from directly or indirectly using for their own benefit the Software and/or the Source Code until Pegasus' right to a permanent injunction is determined;

b.     that a permanent injunction be ordered on final trial of this cause, enjoining Defendants and any of Defendants' agents, contractors and customers from directly or indirectly using the Software and/or Source Code;

c.      that Pegasus be awarded judgment against Northrop and Integic for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, plus Pegasus' attorneys fees and costs incurred pursuant to Fla. Stat. Section 501.2105 (1) as well as costs of suit and prejudgment interest; and

d.      trial by jury and any and all other relief at law or equity this Court deems appropriate.

**COUNT VII**
**REVERSE PASSING OFF**
**(Violation of 15 U.S.C. Section 1051 et seq., The Lanham Act)**
**AGAINST INTEGIC CORPORATION AND**
**NORTHROP GRUMMAN CORPORATION**

66.      Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 16, paragraphs 19 through 24 as if set forth herein.  This is a count for reverse passing off (also known as "reverse palming off") pursuant to the Lanham Act, 15 U.S.C. 1125(a).

67.      Pegasus protects its trademarks under Federal and State common law, and in addition, has filed for, obtained and maintained trademarks and associated protection of the marks "Pegasus" and "ImagXpress."   Pegasus is in the process of federally registering its trademark "ImagXpress" with the United States Patent and Trademark Office.  The serial number for its application is 78409451.  The date of first use in interstate commerce for the trademark "ImagXpress" is May 1, 1998.  On October 17, 2006, Pegasus duly filed and thereafter registered its trademarks "Pegasus" and "Pegasus and Design" with the United States Patent and Trademark Office.   Each of these trademarks has a date of first use in interstate commerce of September 30, 1991.  The

registration numbers are 3155452 and 3155453. Copies of the foregoing trademark registrations filed with the United States Patent and Trademark Office are attached hereto as composite Exhibit "C".

68.     As further set forth herein, Pegasus authored the ImagXpress Software. Since authoring and developing the Software, Pegasus has been and remains the sole proprietor of all its rights, title and interest in and of all trademarks of the Software, and required authorized licensees to provide proper designation and recognition of the origin, ownership and trademark of Pegasus and ImagXpress in and regarding the Software.

69.     As set forth in paragraphs 21 and 22 above, the License Agreement required that all licensees "include a statement substantially similar to the following within derivative work's documentation and about box:  "This product contains portions of imaging code owned by Pegasus Imaging Corporation, Tampa, FL (www.pegasusimaging.com)."

70.     Pegasus is informed and believes and based thereon alleges that Defendants have incorporated Pegasus' Software in the CHCS II and/or AFHLTA systems and applications and continue to utilize the Software to this day as a wholly independent aspect or an integral and vital part of CHCS II and AFHLTA and is believed to be regularly in use today in the CHCS II, AFHLTA and/or progeny applications and systems, though the Defendants have done so by merely repackaging the Software without making and providing for the proper designation or recognition of Pegasus' marks or that the creator, developer and owner of the Software is Pegasus.

71.     Such a failure to so truthfully disclose and designate that the Software

originated and is owned by Pegasus, by among other things, omitting that Pegasus created and has ownership of a key component of the CHCS II (AFHLTA) system and/or falsely representing the Software as a component of a system or application the parts of which were wholly created by Defendants, and/or omitting the proper and truthful trademark of Pegasus of the Software (ImagXpress) has and will cause consumer confusion.  The Software is believed deployed by Defendants actions to ten of thousands of end users with no knowledge that they are actually using Pegasus' Software.

72.     As a direct result of Defendants' failure to recognize Pegasus' proper trademarks and origin of the Software, and/or otherwise false designating or omitting Plaintiff's trademarks and creation and ownership of the Software, Plaintiff has and continues to suffer damages in the form of lost profits, revenues and incalculable injury to its trademarks through a likelihood of confusion.

73.     The total loss to plaintiff cannot be accurately measured at this time. However, unless Defendants are enjoined from continuing the course of action described herein and further proceeding to falsely designating or failing to designate at all the origin of the Software (through misrepresentation or omission), Pegasus will suffer irreparable harm.

74.     For the harm and loss suffered by Pegasus, and for harm and loss that will continue, but for the intervention of this Court, Pegasus has no adequate remedy at law. If Defendants are permitted to continue using Pegasus' Software without proper designation of origin, Defendants will realize additional profits by their own wrongs, and Pegasus' will be further damaged.

**WHEREFORE,** Plaintiff, Pegasus, demands against Defendants, Integic and Northrop:

a.      that a temporary injunction be issued restraining Defendants and any agents, contractors and customers of Defendants, from directly or indirectly using for their own benefit the Software until Pegasus' right to a permanent injunction is determined and that a permanent injunction be ordered on final trial of this cause, enjoining Defendants and any of Defendants' agents, contractors and customers from directly or indirectly using the Software pursuant to 15 U.S. C. Section 1116 (a); and

b.      that Pegasus be awarded judgment against Northrop and Integic for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, punitive damages, prejudgment interest and Pegasus' attorneys' fees and costs incurred pursuant to 15 U.S. C. Section 1117 (a); and

c.      trial by jury and any and all other relief at law or equity this Court deems appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, Pegasus, demands trial by jury of all rights so triable.


Dated this 25th day of October, 2007.

**s/ David D. Ferrentino** _____
David D. Ferrentino, Esq. (Trial Counsel)
Florida Bar No.: 908754
dferrentino@allendell.com
Dave Forziano, Esq.
Florida Bar No.: 025755
dforziano@allendell.com

26

Richard A. Harrison
Florida Bar No.: 602493
rharrison@allendell.com
Donald W. Stanley, Jr., Esq.
Florida Bar No.: 231525
dstanley@allendell.com
ALLEN DELL, P.A.
202 South Rome Avenue, Suite 100
Tampa, Florida  33606
Telephone: (813) 223-5351
Facsimile:  (813) 229-6682
Attorneys for Plaintiff