UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEGASUS IMAGING CORPORATION,

**Plaintiff,**

vs.                                                    Case No. 8:07-CV-1937-T-27EAJ

NORTHROP GRUMMAN CORPORATION,
and NORTHROP GRUMMAN INFORMATION
TECHNOLOGY, INC.,

**Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Defendant Northrop Grumman Corporation's Motion to

Dismiss Count IV of the Amended Complaint for Failure to State a Claim (Dkt. 43), Defendant

Northrop Grumman Information Technology, Inc.'s Motion to Dismiss Counts V, VI and VII for

Failure to State a Claim (Dkt. 48), and Plaintiff's Motion for Substitution (Dkt. 40). Upon

consideration, Defendant Northrop Grumman Corporation's Motion to Dismiss Count IV (Dkt. 43)

is GRANTED, Defendant Northrop Grumman Information Technology, Inc.'s Motion to Dismiss

Counts V, VI and VII (Dkt. 48) is GRANTED in part and DENIED in part, and Plaintiff's Motion

for Substitution (Dkt. 40) is GRANTED.

Plaintiff, Pegasus Imaging Corporation ("Pegasus"), is a developer of document imaging

software. (Dkt. 35, Am. Compl. ¶¶ 3, 13). In the Amended Complaint, Pegasus brings this action

against Northrop Grumman Information Technology, Inc. as successor in interest to Integic

Corporation ("NGIT") alleging breach of license agreement, copyright infringement, violation of the

Lanham Act, and other state law causes of action. (Dkt. 35, Am. Compl.). The Amended Complaint

1

also alleges copyright infringement against Defendant Northrop Grumman Corporation ("NGC"). (Dkt. 35, Am. Compl.). The claims arise from Defendants' alleged use of Pegasus' ImagXpress Software in connection with their creation of a military medical records system (known as "AHLTA") created by Defendants for the Department of Defense, which Pegasus contends exceeds the scope of Integic's license for use of the software. (Dkt. 35, Am. Compl. ¶¶ 13-18). Specifically, Pegasus contends that Integic "copied, placed, and included Pegasus' ImagXpress software . . . in certain Builds or Releases of AHLTA in a manner that exceeded the scope of the License Agreement and that was unauthorized and improper." (Dkt. 35, Am. Compl. ¶ 18).

NGC moves to dismiss Count IV of Plaintiff's Amended Complaint for failure to state a claim. (Dkt. 43). NGIT moves to dismiss Counts V, VI and VII of Plaintiff's Amended Complaint for failure to state a claim.

### Standards

When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (citations omitted). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted). Until the recent Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, pursuant to *Twombly*, which abrogated *Conley*, to survive a motion to

2

dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65. Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted).

## Discussion

### Count IV - Copyright Infringement (Vicarious and Contributory)

In Count IV of the Amended Complaint, Pegasus alleges that NGC committed vicarious and contributory copyright infringement "because of NGC's knowledge regarding, its right and ability to supervise, its material contribution to and its receipt of direct financial benefit as a result of, the infringing conduct of both Integic (during its existence) and NGIT . . . ." (Dkt. 35, Am. Compl. ¶ 84).

A party infringes vicariously by "profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). The defendant must have the right and ability to supervise the infringing activity and must have a direct financial interest. *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987). A defendant may be vicariously liable for copyright infringement even if ignorant of the infringement. *So. Bell Tel. and Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985).

Liability for contributory infringement is available when "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another."

3

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (citations omitted). To be contributorily liable, the defendant must have at least objective knowledge of the infringement. *Id.*

"It is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). A parent corporation cannot be held liable for the infringement of its subsidiary unless there is a "substantial and continuing connection" between the infringing acts of the parent and subsidiary. *See Howard Johnson v. Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990) (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989)). "[T]here must be indicia beyond the mere legal relationship showing that the parent is actually involved with the decisions, processes, or personnel directly responsible for the infringing activity." *Banff Ltd. v. Limited, Inc.*, 869 F.Supp. 1103. 1109 (S.D.N.Y. 1994). The right and ability to supervise must go beyond the parent-subsidiary relationship and is usually marked by day-to-day control. *Bennett v. Tu-Cows, Inc.*, No. 06-13221, 2007 WL 2178317, at *6 (E.D. Mich. July 27, 2007) (citations omitted).

Pegasus fails, under the dictates of *Twombly*, to allege facts sufficient to state a claim against NGC for vicarious or contributory infringement. The Amended Complaint includes only vague and conclusory allegations with respect to direct involvement by NGC. For example, Pegaus alleges in a conclusory manner that NGC committed vicarious and contributory infringement "because of NGC's knowledge regarding, its right and ability to supervise, its material contribution to and its receipt of direct financial benefit . . . ." (Dkt. 35, ¶ 84). In addition, Pegasus vaguely alleges that "approval and authorization of NGC of the . . . widespread dissemination of the offending Builds or Releases of AHLTA was obtained by, at minimum, internal correspondence with Integic and

4

NGIT, including through routine and ordinary reports by interlocking directors, officers and employees or through extraordinary supervision of the AHLTA project." (Dkt. 35, ¶ 93).

The Amended Complaint fails to include sufficient factual allegations of NGC's direct participation in the decisions, processes, or personnel directly responsible for the infringing activity." *Banff Ltd.,* 869 F.Supp. at 1109. Moreover, while authorization and assistance of a parent corporation may constitute material contribution, "[t]he authorization or assistance must bear a direct relationship to the infringing acts." *Berry v. Deutsche Bank Trust Co.*, No. 07 Civ. 7634(WHP), 2008 WL 4694968, at * 5 (S.D.N.Y. Oct. 21, 2008). The Amended Complaint does not include a sufficient factual basis that NGC authorized or assisted the alleged infringement or that NGC's purported "approval and authorization" "by, at minimum, internal correspondence with Integic and NGIT, including through routine and ordinary reports by interlocking directors, officers and employees or through extraordinary supervision of the AHLTA project" was directly related to the alleged infringement. (Dkt. 35, ¶ 93). Accordingly, Count IV of the Amended Complaint is DISMISSED.

**Count V- Florida Uniform Trade Secrets Act**

In Count V, Pegasus alleges that the source code used to build its software is a trade secret. Pegasus alleges that Defendant NGIT, as successor in interest to Integic, misappropriated Pegasus' trade secret in violation of the Uniform Trade Secrets Act, Fla. Stat. § 668.001, *et seq.*, when "Integic accessed or obtained Pegasus' Source Code and placed the Source Code and/or the Software in certain Builds or Releases of AHLTA." (Dkt. 35, ¶ 108). Pegasus contends that "several Builds or Releases of AHLTA containing Pegasus' Source Code have been deployed . . . such that . . . there has been the copying and distribution of over Sixty-One Thousand (61,000) copies of Pegasus' Source Code." (Dkt. 35, ¶ 109). NGIT disputes that Pegasus can properly state a claim based upon

misappropriation of software, which is not trade secret, by virtue of the fact that the software contains trade secret source code. (Dkt. 49, p. 4).   According to NGIT, computer software is distributed to the public in "object code" form and, when made publicly available for license or sale, cannot be trade secret. (Dkt. 49, p. 5).

> In defining "trade secret," Fla. Sta. § 688.002(4) provides:
>
> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

NGIT's contention that computer software cannot be trade secret because its "object code" is distributed to the public is rejected.   Computer software can be trade secret if both prongs of § 688.002(4) are satisfied. *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F. Supp. 337, 357 (M.D. Ga. 1992) (interpreting identical provision in Georgia Trade Secrets Act); *see also Bateman v. Mneumonics, Inc.*, 79 F.3d 1532, 1549-50 (11th Cir. 1996) (state law trade secret claim related to misappropriation of computer software not preempted by Copyright Act because trade secret statute requires extra element of confidential relationship).

In this case, Pegasus alleges that its Software is built upon a trade secret source code which "derives independent actual and potential economic value from not being known, and not being readily ascertainable by proper means, to other persons and entities who can obtain economic value from its disclosure or use. (Dkt. 35, ¶ 106).   Pegasus also alleges that it "has maintained the secrecy of the Source Code through considerable expense and efforts." (Dkt. 35, ¶ 106).   These conclusory

allegations do not meet the pleading requirements of Rule 8 as set forth in *Twombly.* 127 S. Ct. at 1964-65, 1974. Thus, while Pegasus may be able to amend its complaint to allege a cause of action for misappropriation of trade secret, the Amended Complaint as currently plead is insufficient. Accordingly, Count V of the Amended Complaint is DISMISSED.

**Count VI - Florida Deceptive and Unfair Trade Practices Act (FDUTPA)**

In Count VI of the Amended Complaint, Pegasus alleges that NGIT, as successor in interest to Integic, violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, when it "engaged in business practices as recited above . . . which are unlawful, unfair and deceptive acts and practices in violation of Section 501.201 et seq." (Dkt. 35, ¶ 118). Pegasus also alleges that "[t]he Builds or Releases of AHLTA containing Pegasus' software is believed to be deployed to thousands of end users . . . with no knowledge that they are actually using Pegasus' software." (Dkt. 35, ¶ 119). Defendant contends that Pegasus' FDUTPA claim is preempted by the Copyright Act, 17 U.S.C. § 101, *et seq.*

The Copyright Act preempts state law causes of action for violations of rights either found in the Act or equivalent to rights found in the Act. *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001) (citing 17 U.S.C. § 301(a)). The Court "must decide whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103 and whether the rights at issue are 'equivalent to' the exclusive rights of section 106." *Crow v. Wainwright*, 720 F.2d 1224, 1225-26 (11th Cir. 1983) "The result . . . is that the Act 'preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law.'" *Id.* (quoting *Comp. Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)). To determine whether a state law claim is preempted, the Eleventh Circuit employs the

7

"extra element" test, which asks whether "an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display." *Id.* If an extra element exists, then the state law claim is not preempted. *Id.*; *see also Bateman*, 79 F.3d at 1549 ("[A] state law claim is not preempted if the 'extra element' changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim.") (citations omitted).

Claims asserted pursuant to FDUTPA are not per se preempted by the Copyright Act. *Donald Frederick Evans & Assocs., Inc.*, 785 F.2d 897, 915 (11th Cir. 1986). To establish a claim under FDUTPA, a plaintiff must show (1) a deceptive or unfair practice, (2) causation, and (3) actual damages. *E.g., Millenium Travel & Promotions, Inc. v. Classic Promotions & Premiums, Inc.*, No. 6:08-cv-290-Orl-28KRS, 2008 WL 2275555, at *3 (M.D. Fla. June 2, 2008). Where, however, the only unfair or deceptive practice is the same conduct which forms the basis of the plaintiff's copyright claim, the FDUTPA claim is preempted. *Millenium Travel & Promotions, Inc.*, 2008 WL 2275555, at *3.

As plead, Pegasus' claim under FDUTPA that "Integic engaged in business practices as recited above . . . which are unlawful, unfair and deceptive acts and practices" does appear to be based on the same alleged conduct which forms the basis for Pegasus' copyright claim. However, Plaintiff further alleges that "[t]he Builds or Releases of AHLTA containing Pegasus' Software is believed to be deployed to thousands of end users, including over one-hundred thousand military health service staff members . . . with no knowledge that they are actually using Pegasus' Software. Upon information and belief AHLTA impacts over 400 medical clinics and 400 dental clinics across the military health system . . . and, potentially, will be shared by the DoD, and integrated, with private health facilities." (Dkt. 35, ¶ 119). At this stage of the proceedings, Pegasus' allegation that

8

the Builds or Releases of AHLTA containing Pegasus' software have been deployed to thousands of end users without knowledge that they are using Pegasus' software creates an inference of a likelihood of consumer confusion, thereby satisfying the "extra element" test. *R. Miller Architecture, Inc. v. Edginton Enterprises, Inc.*, No. 6:06-cv-871-Orl-19DAB, 2007 WL 496614, at *5 (M.D. Fla. Feb. 12, 2007) (FDUTPA claim alleging confusion in marketplace distinguished from copyright claim and not preempted). Accordingly, NGIT's motion to dismiss Count VI of the Amended Complaint is DENIED.

**Count VII - Lanham Act**

In Count VII of the Amended Complaint, Pegasus alleges that NGIT, as successor in interest to Integic, violated the Lanham Act by "reverse passing off" Pegasus' software under its own name in Builds or Releases of AHLTA. (Dkt. 35, ¶¶ 124-128). Specifically, Pegasus alleges that Integic failed to include within AHLTA's documentation and about box a required statement that "this product contains portions of imaging code owned by Pegasus Imaging Corporation . . . ." (Dkt. 35, ¶¶ 127-128; Am. Compl. Ex. A). NGIT contends that Pegasus' reverse passing off claim is preempted by the Copyright Act.

Pegasus' claim is made pursuant to 15 U.S.C. § 1125(a), which imposes liability upon:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another

9

person's goods, services, or commercial activities.

To establish a claim for reverse passing off under the Lanham Act, a plaintiff must show: 1) the item at issue originated with the plaintiff; 2) the defendant falsely designated the origin of the work; 3) the false designation was likely to cause consumer confusion; and 4) the plaintiff was harmed by the defendant's false designation." *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1251 (M.D. Fla. 2002) (internal citations omitted). The Amended Complaint adequately alleges a reverse passing off claim.

NGIT's contention that Pegasus' Lanham Act claim is preempted by the Copyright Act is rejected. "The federal Copyright Act does not preempt the federal Lanham Act, or vice-versa. In fact, it is common practice for copyright owners to sue for both infringement under the 1976 Copyright Act and unfair competition under the Lanham Act." *Alameda Films SA de CV v. Authors Rights Restoration Corp., Inc.*, 331 F.3d 472 (5th Cir. 2003). As discussed above, 17 U.S.C. § 301(a) precludes state law claims that are equivalent to rights provided by the Copyright Act. *Foley*, 249 F.3d at 1285. The Act expressly provides, however, that "[n]othing in this title annuls or limits any rights or remedies under any other Federal statute." 17 U.S.C. § 301(d); *see also Tracy v. State Key, Inc.* 697 F. Supp. 748, 750 (S.D.N.Y. 1988); *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 712-13 (D. Md. 2001). Indeed, Eleventh Circuit caselaw has implicitly recognized that the two claims may coexist. *See Lipsher v. LRP Pubs.*, 266 F.3d 1305 (11th Cir. 2001); *Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999). Nevertheless, "courts have sometimes dismissed Lanham Act claims where the copyright laws provided an adequate remedy," and have couched their

decisions in terms of preemption. *R. Miller Architecture, Inc.*, 2007 Wl 496614, at *8.[1]

The Supreme Court addressed the compatibility of a claim under the Copyright Act and a "reverse passing off" claim under the Lanham Act in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  In *Dastar*, the plaintiffs alleged that defendant's sale of slightly modified copies of plaintiff's television series constituted "reverse passing off" in violation of the Lanham Act. *Id.* at 27.  The copyright on the television series had expired, leaving it in the public domain. *Id.*  The Court found that imposing Lanham Act liability under circumstances involving an expired copyright would conflict with federal copyright law, which allows the public the right to copy without attribution once a copyright has expired. *Id.* at 28.  In rejecting plaintiffs' claim, the Court found that "the phrase 'origin of goods' in the Lanham Act . . . refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. Accordingly, because defendant was the 'origin' of the products it sold as its own, plaintiffs could not prevail on their Lanham Act claim. *Id.* at 38.  *Dastar* does not support NGIT's proposition that the Copyright Act preempts claims made pursuant to the Lanham Act and, in any event, is distinguishable from the present case, which does not involve an expired copyright.

Nevertheless, even if a Lanham Act claim could be preempted by federal copyright law, Pegasus' claim would not be subject to preemption because, like Pegasus' claim under FDUTPA, Pegasus' Lanham Act claim contains the "extra element" of the likelihood of consumer confusion.

---

[1] NGIT's citation to *Law Bulletin Publ'g Co. v. LRP Pubs.*, No. 98-8122-CIV, 1998 WL 1969648 (S.D. Fla. June 18, 1998) is misplaced. The district court in *Law Bulletin Publ'g Co.* held, on summary judgment, that plaintiff's state law unfair competition claim for reverse passing off was preempted by the Copyright Act. *Id.* at *4. The plaintiff's Lanham Act claims, which were not subject to the motion, were not dismissed.

(Dkt. 35, ¶¶ 129, 130). *Magical Mile, Inc. v. Benowitz*, 510 F. Supp. 2d 1085, 1089 (S.D. Fla. 2007) (Lanham Act not preempted by Copyright Act where "federal unfair competition claim seeks to protect Magical Mile's designs from being associated or confused with Defendants', as opposed to protecting Magical Mile's rights in its copyrights . . . ."); *cf. Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990) (affirming dismissal of Lanham Act claim on summary judgment based on finding that the likelihood that the two works would be confused was minimal). Because Pegasus' Lanham Act claim is based not solely upon allegations of unattributed copying and distribution, but contains additional allegations of consumer confusion, Pegasus' Lanham Act will be allowed to proceed. Accordingly, NGIT's motion to dismiss Count VII of the Amended Complaint is DENIED.

**Motion for Substitution**

Pegasus seeks to substitute NGIT as a party for Integic, who Pegasus contends is Integic's successor in interest by way of merger. (Dkt. 40). Pursuant to Rule 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. Fed. R. Civ. P. 25(c).

The Amended Complaint names NGIT as a party, both individually and as successor in interest to Integic. Integic, who was named as a defendant in Pegasus' original complaint, is not a named defendant in the Amended Complaint. Pegasus requests that NGIT be substituted for Integic as to those allegations for which NGIT is named as successor in interest to Integic. (Dkt. 40, p. 5). Defendants concede that Integic merged into NGIT and ceased to exist as a separate entity, and that NGIT succeeded to all of Integic's rights and obligations, but contend that since NGIT is already a

12

party, it need not be substituted for Integic. (Dkt. 42, pp. 2, 3). Defendants further contend that the requested substitution would have no substantive effect on the proceeding. (Dkt. 42, p. 2).

Upon consideration, Pegasus' motion for substitution is GRANTED. As to Pegasus' allegations made against NGIT as successor in interest to Integic, NGIT is substituted. *See Monahan v. Comm'r of Internal Revenue,* 321 F.3d 1063, 1064 (11th Cir. 2003) (noting that decedent's wife, who was already a party to the suit, was substituted to represent the interests of decedent's estate).

Accordingly, it is **ORDERED AND ADJUDGED** that:

1) Defendant Northrop Grumman Corporation's Motion to Dismiss Count IV of the Amended Complaint for Failure to State a Claim (Dkt. 43) is **GRANTED**. Count IV of the Amended Complaint is **DISMISSED**.

2) Defendant Northrop Grumman Information Technology, Inc.'s Motion to Dismiss Counts V, VI and VII for Failure to State a Claim (Dkt. 48) is **GRANTED** as to Count V and **DENIED** as to Counts VI and VII. Count V of the Amended Complaint is **DISMISSED**.

3) Plaintiff is granted twenty (20) days in which to amend its Complaint.

4) Plaintiff's Motion for Substitution (Dkt. 40) is **GRANTED**.

**DONE AND ORDERED** in chambers this 24th day of November, 2008.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record