## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**PEGASUS IMAGING CORPORATION,**
a Florida Corporation,

      **Plaintiff**

                                     **Case No. 8:07-cv-01937-JDW-EAJ**

      **vs.**

**NORTHROP GRUMMAN CORPORATION,**
a Delaware Corporation,
**NORTHROP GRUMMAN**
**INFORMATION TECHNOLOGY, INC.,**
a Delaware Corporation and
**NORTHROP GRUMMAN**
**INFORMATION TECHNOLOGY, INC.,**
a Delaware Corporation, as successor
in interest to **INTEGIC CORPORATION,**
formerly a Virginia Corporation             **JURY TRIAL DEMANDED**

      **Defendants**                     **INJUNCTIVE RELIEF**
                                           **REQUESTED**

_____/

## SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff, Pegasus Imaging Corporation, a Florida corporation ("Pegasus" or "Plaintiff") hereby files this, its Second Amended Complaint for Damages, Injunctive Relief and Demand for Jury Trial against Northrop Grumman Corporation, a Delaware corporation ("NGC"), Northrop Grumman Information Technology, Inc., a Delaware corporation and Northrop Grumman Information Technology, a Delaware corporation, as successor in interest to Integic Corporation, formerly a Virginia corporation (Northrop Grumman Information Technology, Inc. and Northrop Grumman Information Technology, Inc. as successor in interest to Integic Corporation are referred herein at

times as "NGIT") (NGC and NGIT are referred to collectively herein at times as "Defendants") and alleges as follows:

## JURISDICTION, PARTIES AND VENUE

1.     This Court has federal question jurisdiction over this case or controversy pursuant to 28 U.S.C. Sections 1331 and 1338(a) by virtue of the United States Copyright Act, 17 USC Section 101, et seq. and the United States Trademark (Lanham) Act, 15 USC Section 1051, et seq.. The Court also has jurisdiction of this cause pursuant to 28 U.S.C. Section 1332 as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

2.     This Court has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. Section 1367 because the state law claims are so related to the original jurisdiction federal claims raised herein that they form a part of the same case or controversy under Article III of the United States Constitution.  Further, there exists no reason for this Court to decline to exercise supplemental jurisdiction under subsection (c) of 28 U.S.C. Section 1367.

3.     Plaintiff Pegasus is a Florida corporation, authorized to do business in Florida. Pegasus is in the business of creating, producing, selling, and distributing computer software that produces a full range of document imaging toolkits, forms processing technology, medical image compression SDKs, photo editing, compression imaging libraries, browser-based image viewers, video codecs and related technologies which provide or improve and enhance imaging software solutions. Plaintiff's principal place of business is, and at all material times referenced herein was, in Tampa, Hillsborough County, Florida.

4.    Defendant NGC is a Delaware corporation with its principal place of business in Los Angeles, California.   NGC is an integrated enterprise consisting of approximately twenty-five (25) formerly separate businesses that cover the entire defense spectrum.   NGC conducts most of its business with the United States Government, principally through the United States Department of Defense ("DoD").   Defendant NGC does business throughout Florida and maintains numerous offices and/or agents in towns and cities throughout Florida, including, Tampa, Apopka, Hurlburt Field, Melbourne, Orlando, Winter Park, St. Augustine, and Homestead.

5.    Defendant NGIT is a Delaware corporation with its principal place of business in Los Angeles, California.   NGIT is owned directly or indirectly by NGC and is NGC's business arm for the information technology sector, providing business solutions to government, commercial and international enterprises.   NGIT provides advanced information technology solutions, engineering services and business services for federal, state and local governments, and commercial customers.   NGIT is registered and has been registered to do business in the State of Florida with the Florida Secretary of State since approximately 1978 and transacts not isolated acts of business throughout Florida, including a long term relationship with NASA providing much of the infrastructure support (logistics, quality assurance, safety and information technology security) for launch and base operations at the Kennedy Space Center and Cape Canaveral Air Force Stations in the State of Florida.   NGIT also participates in several joint ventures in the State of Florida, including collaboration in research studies with the University of Central Florida.   NGIT has and maintains an office in Tampa, Florida, has and maintains

employees in Florida and presently offers numerous employment opportunities for positions in Florida on its website.

6.    Prior to December 31, 2007 there existed a Virginia corporation known as Integic Corporation which was acquired by Defendant NGIT in approximately March 2005 and which, ultimately, on or about December 31, 2007 was merged into NGIT and ceased to exist.  Hereinafter when referring to Integic Corporation, the term "Integic" is used.  Integic was a systems integration provider that helped companies connect their legacy data systems to online business applications. Integic primarily served governmental entities as well as health care and life sciences companies.  Through and with NGC and NGIT, Integic conducted business throughout the United States and had its principal place of business in Los Angeles, California.

7.    Integic established and maintained employees and independent contractors in Florida to fulfill obligations regarding projects for third party private clients or entities and various components of the Department of Defense.  Such Integic employees and independent contractors were stationed and resided throughout Florida, including in Tampa, Ft. Walton Beach, Cocoa Beach, Panama City, Jacksonville, Pensacola, and Orlando.  At all material and applicable times referenced herein, Integic had business relationships with private commercial enterprises in Florida.  For example, Integic entered into contracts with Florida based enterprises, consented to jurisdiction in Florida in various contracts, regularly had employees in training and otherwise fulfilling contractual obligations Integic had sought out and agreed to, hired and maintained employees and contractors working in the State of Florida and generated millions of dollars in revenue from its Florida operations or activities.  In fact, Integic had Florida

4

based personnel (which may have included the CEO and Chairman) and offices and had been registered for years with the Florida Secretary of State to conduct business in the State of Florida until approximately six months after NGIT acquired Integic and started transitioning and merging Integic's operations into NGIT as more fully described hereafter. Additionally, Integic employees located outside of Florida routinely traveled to Florida to fulfill contractual obligations, participate in sales and marketing efforts, engage in training activities and Integic junkets and retreats.

8.     Integic was acquired on or about March of 2005 by NGIT, with NGIT, directly or indirectly, acquiring 100% of the stock and ownership of Integic. During the period from approximately March of 2005 through December of 2007 (the "Transitional Period"), Integic was integrated into NGIT, and ultimately, on or about December 31, 2007, NGIT merged Integic into itself (NGIT) upon which time and event NGIT assumed all of the rights and liabilities of Integic and Integic ceased to exist. Accordingly, from approximately January 1, 2008 forward, NGIT has been, and to this day is, the successor in interest to Integic by merger, with NGIT assuming and responsible for all of the liabilities of Integic.

9.     NGIT is responsible and liable for the wrongful conduct described in this complaint because: 1) immediately after acquiring Integic in March 2005 and throughout the Transitional Period, NGIT directly and fully controlled and supervised Integic's wrongful actions during the Transitional Period; 2) as a result of NGIT's December 2007 merger of Integic into itself, NGIT is the successor in interest of Integic by way of merger and therefore liable for all wrongful actions committed by Integic and complained of herein; and 3) as Integic is, and has been since approximately January 1, 2008, no

longer in existence and NGIT assumed all of Integic's rights, liabilities and operations, NGIT is in control of Pegasus' Software and source code wrongfully copied and distributed or placed into other systems as described herein, and the entity which, since January 1, 2008 has been in position to remedy any continuing damages and wrongs being committed against Pegasus and against whom damages incurred by Pegasus since January 1, 2008 and injunctive relief, as requested herein, would be applicable and assessed. NGC is liable and responsible for the causes of actions brought against it as further explained and included herein because of its knowledge regarding, its right and ability to supervise, its material contribution to and its receipt of direct financial benefit as a result of, the infringing conduct of both Integic and NGIT. Accordingly, the causes of action brought in this second amended complaint are set forth and described in the corresponding counts as follows:

i.     Count I is an action for breach of a license agreement against NGIT, as successor in interest to Integic with regard to breaches and/or other actionable conduct occurring or committed before January, 1, 2008; and against NGIT as the actor breaching the license agreement (to which it succeeded via the merger) after January 1, 2008 to the present and continuing;

ii.    Count II is an action for violation of the Federal Copyright Act against NGIT as successor in interest to Integic with regard to violations of the Federal Copyright Act committed or occurring before January, 1, 2008 and against NGIT as the actor of the continuing violations of the Federal Copyright Act or infringement committed or occurring on or after January 1, 2008 and presently continuing as described herein;

iii.    Count III is an action for violation of the Federal Copyright Act against NGIT because NGIT has infringed, in a vicarious and contributory manner, Pegasus's rights and copyrights in and relating to Pegasus's Software. This count addresses NGIT's liability for vicarious and contributory infringement committed during the Transitional Period and is based upon NGIT's knowledge regarding, its right and ability to supervise, its material contribution to and its receipt of direct financial benefit as a result of, the infringing conduct of Integic;

iv.    Count IV is an action for violation of the Federal Copyright Act against NGC because NGC has and continues to infringe, in a vicarious and contributory manner, Pegasus's rights and copyrights in and relating to Pegasus's Software. NGC's liability for vicarious and contributory infringement includes the Transitional Period through today and is based on NGC's knowledge regarding, its right and ability to supervise, its material contribution to and its receipt of direct financial benefit as a result of, the infringing conduct of both Integic (during its existence) and NGIT;

v.    Count V is an action for violation of the Florida Uniform Trade Secrets Act against NGIT as successor in interest to Integic with regard to violations of the Florida Uniform Trade Secrets Act committed or occurring before January, 1, 2008 and against NGIT as the current actor of the continuing violations of the Florida Uniform Trade Secrets Act being committed or occurring on or after January 1, 2008 and continuing to the present, as described herein;

vi.    Count VI, is an action for violation of the Florida Deceptive and Unfair Trade Practices Act against NGIT as successor in interest to Integic with regard to violations of the Florida Deceptive and Unfair Trade Practices Act committed or

7

occurring before January, 1, 2008 and against NGIT as the current actor of the continuing violations of the Florida Deceptive and Unfair Trade Practices Act being committed or occurring on or after January 1, 2008 and continuing to the present, as described herein; and

    vii.    Count VII, is an action for reverse passing off (also known as "reverse palming off") pursuant to the Lanham Act, 15 U.S.C. 1125(a) against NGIT as successor in interest to Integic with regard to violations of the Lanham Act committed or occurring before January, 1, 2008 and against NGIT as the current actor of the continuing violations of the Lanham Act being committed or occurring on or after January 1, 2008 and continuing to the present, as described herein.

    10.    This Court has personal jurisdiction of the Defendants NGC and NGIT pursuant to Fla. Stat. § 48.193, as follows:  (a) pursuant to Fla. Stat. § 48.193(1)(a), in that the Defendants and each of them are operating, conducting, engaging in, or carrying on a business or business venture in this state or have an office or agency in this state; (b) pursuant to Fla. Stat. § 48.193(1)(b), in that the Defendants and each of them has committed a tortious act within this state; (c) pursuant to Fla. Stat. § 48.193(1)(f), in that the Defendants and each of them has caused injury to property within this state arising out of an act or omission by said Defendants outside this state and either the Defendants were engaged in solicitation or service activities within the state or products, materials or things processed, serviced or manufactured by the Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade or use; (d) pursuant to Fla. Stat. § 48.193(1)(g), in that the Defendants and each of them breached a contract in this state by failing to perform acts required by the contract to be performed in this

state; (e) pursuant to Fla. Stat. § 48.193(2), in that the Defendants and each of them is engaged in substantial and not isolated activity within this state. The Defendants and each of them have purposely availed themselves of the privilege of conducting activities within the state of Florida, thus invoking the benefits and protections of its laws, and there are adequate minimum contacts such that the Defendants and each of them should reasonably anticipate being haled into court in Florida. Moreover, the exercise of jurisdiction over the Defendants and each of them would not offend traditional notions of fair play and substantial justice.

11.     Venue lies in the Middle District of Florida pursuant to 28 U.S.C. Sections 1400(a) and 1391 (b) (1), (2) and/or (3) and 1391 (c) as the Defendants "reside" in this district and are subject to personal jurisdiction in this district and division, the Defendants entered into contracts in this judicial district, a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and one or more of the Defendants may be found in and are subject to personal jurisdiction in this district.

12.     The case or controversy is appropriately heard in the Tampa Division in the Middle District of Florida pursuant to the Middle District Local Rule 1.02(c), as the Tampa Division encompasses the counties having the greatest nexus with the causes of action and claims of the Plaintiff alleged herein. All conditions precedent to the maintenance of this cause have been performed or have occurred.

### BACKGROUND AND FACTS
### SUPPORTING REQUESTED RELIEF

13.     Pegasus creates, develops, supports and licenses a number of computer software programs. One such program is Pegasus' "ImagXpress" program also known as

"Pegasus Development Toolkit (TOOLKIT)" (hereinafter "ImagXpress" or "Software"), which is a comprehensive image processing toolkit designed for document imaging, forms processing, photo and color imaging application development. Pegasus' Software comprises and is an original work of authorship of Pegasus. While delivering fast processing speeds, ImagXpress offers extensive features such as image viewing, thumbnail image support, editing, clean up, annotation, file format conversion, compression, crop, rotate, multiple image scaling algorithms, scrollbar, auto size, TWAIN scanning and printing capabilities. Pegasus first created and introduced ImagXpress to the marketplace in approximately mid 1996. The first version of ImagXpress was known as "PhotoPro" and the name was changed to ImagXpress in late 1998. Thereafter, Pegasus has enhanced and released upgrades to the Software via new "versions" though prior versions are still widely used by individuals and entities which have entered into licenses with Pegasus to be authorized users of the Software.

14.    Integic created, or was the primary creator of, a paperless medical information system that will generate and maintain a comprehensive, lifelong, computer-based patient record for every soldier, sailor, airman, and marine and their family members and others entitled to DoD military health care, known as the Composite Health Care System II ("CHCS II") and/or the Armed Forces Health Longitudinal Technology Application ("AHLTA"). CHCS II and AHLTA refer to the same system, which simply underwent a name change; accordingly, hereinafter, the system will be referred to solely as "AHLTA." As further explained below, Integic entered into a license agreement with Pegasus for the use of Pegasus' ImagXpress software ("ImagXpress" or "Software") and, it is now known, used Pegasus' Software to help create and implement AHLTA for years.

Integic and NGIT have worked on virtually all facets of AHLTA and have performed, worked or provided services on AHLTA regularly in the State of Florida, and have similarly worked on the system known as CHCS I or CHCS Legacy (which works in conjunction with AHLTA) in the State of Florida. There are presently in the State of Florida individuals who were employees of Integic and are now employees of NGIT or NGC (the employees themselves are uncertain) working on AHLTA.

15.    On or about approximately July 24, 2003 and thereafter in 2003, 2004 and 2006 Integic downloaded from Pegasus' website and licensed a copy of Pegasus' ImagXpress Software pursuant to an accompanying license agreement, which Integic has acknowledged, a copy or exemplar of which is attached hereto as Exhibit "A" (the "License" or "License Agreement").

16.    While, despite Pegasus' requests and inquiries, clear and meaningful information as to the copying, use and application of Pegasus' Software was refused and concealed, it now appears to Pegasus that at some point after downloading Pegasus' ImagXpress Software, unknown to Pegasus, Integic started copying, manipulating and/or using the Software to develop, implement and provide to the Department of Defense AHLTA, which is designed for the DoD's storage, retrieval and accessing of medical information for military personnel and their health care providers.

17.    AHLTA is currently utilized at over 100 Military Treatment Facilities ("MTFs") worldwide, including at locations within Florida. AHLTA was created using a combination of off-the-shelf and custom made products and components. Integic, through a series of contracts (the first, apparently entered into in 1997), provided services regarding the development, integration, sustainment, maintenance and training related to

11

AHLTA. As part of the development and integration services provided for AHLTA, Integic released enhanced versions known as "Builds" or "Releases" for AHLTA. Being one of the first and foremost providers and participants in the AHLTA project, Integic has deep and intimate knowledge of AHLTA and its purpose of providing an informational technology network/system throughout the DoD, which would reside and be used at numerous locations throughout the United States and abroad, including but not limited to approximately 100 MTFs, some of which were and are in the State of Florida.

18.     Possessed with the knowledge of the intended use and breadth of AHLTA, and the numerous locations at which AHLTA would be installed and used, Integic copied, placed and included Pegasus' ImagXpress Software and/or portions thereof, wholly original and owned by Pegasus, in certain Builds or Releases of AHLTA in a manner that exceeded the scope of the License Agreement and that was unauthorized and improper. To date, several Builds or Releases of AHLTA containing Pegasus' Software have been deployed to over 100 MTFs and other locations worldwide, including within Florida, such that, at minimum, there has been the copying and distribution of over Sixty-One Thousand (61,000) copies of Pegasus' Software. Certain employees of Integic were also involved in the downloading or other process by which such Builds or Releases were placed at the MTFs or other locations, including MTFs or other locations within Florida.

19.     On approximately March 21, 2005, while Integic was working on the creation and development of AHLTA containing Pegasus' Software, Defendant NGIT acquired Integic through a transaction, the exact details of which are unknown to Pegasus. Upon and because of NGIT's acquisition of Integic, Integic proceeded through the Transitional Period, in which Integic was integrated into NGIT. During such time,

Integic remained a separate legal entity but was wholly and utterly controlled and dominated by NGIT, to the extent that certain employees who worked on the AHLTA project through which Pegasus' Software was copied and placed or inserted into AHLTA did not, and to this day do not, know whether they worked for Integic, NGIT, or both, at the times during which Pegasus' Software was copied, inserted and placed into AHLTA. Upon information and belief, on or before January 1, 2008, Integic's former business divisions were completely integrated into NGIT and what was Integic currently operates as divisions of NGIT. NGIT operates as a "segment" of NGC and NGC regularly disregards the separate corporate existence of NGIT in sales, marketing, press releases, letterhead, email addresses, paystubs and paychecks and other materials.

20.    During the Transitional Period, from what appears to be approximately March 2005 through December 2007, Integic was a wholly-owned subsidiary of NGIT, directly or indirectly, and NGIT acted in concert with Integic regarding the activities constituting and/or furthering the unauthorized and improper use of Pegasus' ImagXpress Software, including through the interchanging use of the NGIT and Integic employees, agents and facilities. NGIT, through its direct or indirect ownership of Integic, and/or through other mechanisms such as interlocking officers or boards of directors, controlled Integic, and through the direct involvement and actions of NGIT's agents and representatives, NGIT directly participated in, carried out and assisted and promoted the improper and unauthorized copying and use of Pegasus' Software and the other tortious and wrongful conduct committed against Pegasus as detailed herein.

21.    At some point during the Transitional Period, Integic employees, including those who worked directly on AHLTA and provided services pertaining to

AHLTA integration, sustainment, maintenance or training, were transferred and/or were reassigned to NGIT and became NGIT employees and/or joint NGIT/Integic employees. The distinction, if any, between NGIT and Integic employment was completely disregarded and unascertainable by not only third parties dealing with NGIT and Integic but also by the very employees themselves such that the employees made random and interchanging identification of themselves in communications with each other and when holding themselves out to and dealing with third parties. To this day the employees can not identify the time that they ceased employment for Integic and began employment for NGIT or determine whether they were employed by both companies at the same time or how they did or should have held themselves out to third parties.

22. Upon information and belief Integic employees that worked directly on AHLTA after the NGIT's acquisition of Integic in 2005, did so at NGIT's direction and control and now work for NGIT. Because the former Integic, now NGIT, employees are well versed with the breadth of AHLTA and deep knowledge regarding AHLTA and its deployment to MTFs throughout the world, they knew or should have known Builds or Releases into which they copied, placed, inserted and incorporated Pegasus' Software would be downloaded, copied, installed, maintained, accessed and/or used within Florida.

23. The copying, placement and inclusion of Pegasus' Software in certain Builds or Releases of AHLTA continued during and after NGIT's acquisition of Integic. Upon information and belief, by and/or as a result of Integic and NGIT's actions Pegasus' Software, or portions thereof, is to this day copied, placed into and is included as part of certain Builds or Releases of AHLTA that are deployed, in use and/or reside at MTFs, and other locations worldwide.

24.    Before and during the Transitional Period, Integic, fully aware of the use and breadth of AHLTA, and the numerous locations at which AHLTA was and would be installed, downloaded, copied and/or used, continued to develop, copy, place and include Pegasus' ImagXpress Software, and/or portions thereof wholly original and owned by Pegasus, in certain Builds or Releases of AHLTA in a manner that exceeded the scope of the License Agreement and was unauthorized and improper. Additional Builds or Releases of AHLTA containing Pegasus' Software were deployed, downloaded, copied or placed to an unknown number of MTFs and other locations worldwide such that there has been the copying and distribution of unknown additional copies of Pegasus' Software.

25.    During the Transitional Period and afterward, NGIT, fully aware of the use and breadth of AHLTA, and the numerous locations at which AHLTA was and would be installed, downloaded, copied and/or used, continued to develop, copy, place and include Pegasus' ImagXpress Software, and/or portions thereof wholly original and owned by Pegasus, in certain Builds or Releases of AHLTA in a manner that exceeded the scope of the License Agreement and was unauthorized and improper. Additional Builds or Releases of AHLTA containing Pegasus' Software were deployed, downloaded, copied and/or placed to an unknown number of MTFs and other locations worldwide such that there has been the copying and distribution of unknown additional copies of Pegasus' Software.

26.    In December 2007, Integic was merged with and into NGIT pursuant to the laws of the State of Delaware, with NGIT being the only surviving entity and assuming all of Integic's debts and obligations and succeeding to all the rights, privileges,

powers and property, including all patents, trademarks, licenses, registration and other assets of what was Integic. A copy of the Certificate of Merger and the Plan of Merger is attached hereto as composite Exhibit "B".

27.    In the fall of 2006, Pegasus inquired about the copying, use and/or placement of Pegasus' ImageXpress Software in or into AHLTA. Pegasus received limited responses from Integic, NGIT and NGC regarding such use and Pegasus then notified Integic, NGIT and NGC of the wrongful conduct described and complained of herein and requested Integic, NGIT and NGC cease and desist from continuing to violate Pegasus' rights. Integic, NGIT and NGC have failed and refused to honor or abide by Pegasus' requests.

28.    Reports indicate AHLTA is capable of and in fact meeting the demand of housing and making instantly accessible on a paper-less or virtual basis the medical records of the DoD's approximately nine million (9,000,000) patients/personnel from and to anywhere in the world.

29.    Upon information and belief the DoD paid Integic, NGIT and/or NGC millions of dollars (potentially tens of millions of dollars) for initial design, development and testing of the system and continues to pay NGIT and/or NGC for the ongoing integration, sustainment, maintenance and training related to AHLTA, with much of the remuneration being paid to Integic since the time Integic was acquired or affiliated with NGIT.

30.    Integic and NGIT and/or NGC, or all, have charged the DoD and been paid significant amounts for the development, creation and integration of AHLTA, including Builds or Releases of AHLTA in which Pegasus' Software was inserted and/or

is a component. Pegasus has been paid less than $4,000.00 by Integic (or NGIT or NGC) for the use of its Software.

31.    The entities involved in this matter, NGC, NGIT and Integic, are routinely held out and presented as, simply, "Northrop Grumman," such that materials relating to sales, marketing, press releases, letterhead, email addresses, paystubs and paychecks regularly do not indicate to which actual Northrop Grumman entity, if any, the item corresponds or pertains. "Northrop Grumman" employees often fail to indicate, in communications, correspondence, emails and other documents, which entity they represent and, in fact, the same individual may sign corporate documents on behalf of several of the Northrop Grumman entities.  It is difficult to ascertain in any given circumstance, and particularly so with regard to the matters at issue in this complaint, which Northrop Grumman entity one is dealing with at any particular time.

**COUNT I**

**BREACH OF LICENSE AGREEMENT**
**AGAINST NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. as**
**successor in interest to Integic Corporation and NORTHROP GRUMMAN**
**INFORMATION TECHNOLOGY, INC.**

32.    Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 31 above as if set forth herein.

33.    This count is an action for breach of license agreement against NGIT, as successor in interest to Integic with regard to breaches and/or other related actionable conduct occurring and/or committed before January, 1, 2008, and against NGIT as the actor breaching the license agreement (to which it succeeded via the merger) after January 1, 2008 to the present and continuing.

34.    On or about approximately July 24, 2003 and thereafter in 2003, 2004 and 2006 Integic downloaded from Pegasus' website and thereby licensed the Software for the limited use(s) as specified pursuant to an accompanying license agreement, which Integic has acknowledged, a copy or exemplar of which is attached hereto as Exhibit "A" (the "License" or "License Agreement").

35.    The License clearly indicates that regarding the Pegasus Software, Integic, as a licensee, was granted the right to use the Software (described therein as "Tool Kit runtimes") as part of Integic's software application or derivative works (referred to in the License as "Product"). The License further provides, however, that Integic was and would be obligated to uphold the License and notify Pegasus immediately of any changes in status or violations.

36.    Further, while Integic was granted a limited, non-exclusive, right to use, reproduce, display, or otherwise distribute or transfer limited copies of ToolKit runtimes, as an integral part of PRODUCT, in executable form only, such privilege existed only if and *"provided that"* twelve (12) enumerated conditions existed.

37.    The License provides that if *any* of the conditions were not applicable to Integic's circumstance or use (or could not be complied with), then Integic was required to obtain an expanded direct license from Pegasus.

38.    Further, it is now apparent that Integic copied and placed Pegasus' Software in certain Builds or Releases of AHLTA and such copying removed the Software from the License under which Integic could claim any right(s), and that one or more of at least five (5) of the stated and required conditions of the License (if not more) did, in fact, not exist; namely:

18

b.      The total annual PRODUCT(s) sales [derivative works, software application(s) and/or software installation(s)], which includes TOOLKIT runtimes, does not exceed two-hundred fifty thousand dollars ($250,000 US), in any year.

c.      The use is for corporate in-house development project(s), purchase of the Pegasus development kit(s) grants a single site license with TOOLKIT runtime distribution up to 50 CPU's, within derivative work(s), within a single site (physical location).

f.      LICENSEE is not developing a client/server based solution which involves multiple servers or sites, or remote (off-site) clients.

g.      LICENSEE is not developing an internet/intranet server based solution which involves remote (off-site) clients (such as with Cabinet files, JAR files, COM objects, Active X controls, JAVA applets, or Browser plug-ins).

l.      LICENSEE includes a statement substantially similar to the following within derivative work's documentation and about box:  "This product contains portions of imaging code owned by Pegasus Imaging Corporation, Tampa, FL (www.pegasusimaging.com).

39.     Accordingly, the existence of one or more of the above five (5) prohibited conditions and circumstances (if not more) have required and continue to require Integic to cease any use, copying or other actions pertaining to the Software and contact Pegasus to acquire appropriate license(s) from Pegasus meeting Pegasus' approval and thereafter comply with same, including, but not limited to all financial and payment requirements. Causing or allowing one or more of the above conditions to exist, failing to cease using, copying or taking other actions pertaining to Pegasus' Software and failing to obtain an appropriate license from Pegasus, all constitute breaches of the License by Integic.

40. It has now become apparent that Integic also, contrary to and in breach of the License, manipulated, converted, copied, used, reproduced, displayed or otherwise distributed or transferred copies of Pegasus' Software in a form other than "executable form."

41. The License further expressly provides:

> The license granted herein and any and all rights to use or maintain possession of TOOLKIT shall terminate immediately upon breach of any material provision of this Agreement.

Thus, in addition to constituting breaches of the License, Integic's actions have likewise terminated any license or grant of permission to Integic (and NGIT as its successor or otherwise) to use or maintain possession of the Software.

42. As a direct result of Integic's breach of the License Agreement, Pegasus has suffered substantial damages in the form of lost profit, revenues, lost license fees, including, but not limited to, the express right within the License Agreement to charge up to ten (10) times the normal license price for the use of each unlicensed copy, and has had its Software distributed to unauthorized and unknown persons and entities, without compensation.

43. As a result of the December 2007 merger, NGIT, as successor in interest to Integic, is, by operation of law, liable for the breach of the License Agreement and wrongful actions described in this count which were committed or occurred prior to January 1, 2008. Additionally, NGIT was and is the actor breaching the License Agreement (to which it succeeded via the merger) after January 1, 2008 to the present and continuing and is thus also liable for such breaches as well. NGIT is further liable for the breach of the License Agreement, which continues to present day, because of

NGIT (and others to whom Integic and/or Integic provided access or copies) continuing to possess Pegasus' Software since the License Agreement has been materially breached and the License Agreement specifically provides that the license granted therein to maintain possession of the Software terminated upon such breach.

**WHEREFORE,** Plaintiff, Pegasus, demands judgment for damages, including direct, indirect, consequential and special damages, as well a charge of ten times the normal license price for each unlicensed copy as provided for by the License, against Northrop Grumman Information Technology, Inc. as successor in interest to Integic Corporation and Northrop Grumman Information Technology, Inc., plus its attorneys' fees pursuant to the License Agreement, court costs, prejudgment interest, an accounting of licenses wrongfully distributed without authorization, an order that NGIT, its agents, employees and representatives and all other persons in active concert or privity or in participation with it, be enjoined to return to Pegasus any originals, copies, facsimiles or duplicates of the Software in their possession, custody or control and demands trial by jury and such other and further relief as the Court deems proper.

## COUNT II

### COPYRIGHT INFRINGEMENT
### (Violation of 17 U.S.C. Section 101 et seq., The Federal Copyright Act)
### AGAINST NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. as successor in interest to Integic Corporation and NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.

44.     Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 31, above as if set forth herein.

45.     This count is an action for violation of the Federal Copyright Act against NGIT as successor in interest to Integic with regard to infringement occurring before

January, 1, 2008 and against NGIT for the infringement occurring after January 1, 2008 and continuing to the present.

46.     Pegasus authored the ImagXpress Software, and the Software contains and is material wholly original and is copyrightable subject matter under applicable law immediately upon creation.

47.     Since authoring and developing the Software, Pegasus has been and still is the sole proprietor of all its rights, title and interest in and to all copyrights in the Software.

48.     Further, on or about July 3, 2007, Pegasus registered its copyright in its Software with the Register of the United States Copyright Office in Washington D.C. (a copy of the copyright registrations numbered TXul-352-550 and TXul-361-085 are attached hereto as composite Exhibit "C") thus providing Pegasus additional specific rights for the enforcement of its copyright and redress for any infringement thereof. Pegasus has complied in all respects with the Copyright Act, 17 U.S.C. Section 101, et seq. (the "Copyright Act").

49.     While Pegasus permitted Integic limited rights to use the Software pursuant to the License Agreement, Pegasus retained all ownership and copyright in and to the Software, and Integic's rights to use the Software were limited to the terms and conditions provided in the License.

50.     As described in paragraphs 35 through 40, Integic used the Software in a manner which is outside of and in violation of the License. Moreover, as described in paragraph 41, the License agreement between Pegasus and Integic terminated prior to the filing of this action, because of Integic's actions in violation of the License, thus

terminating any arguable right of Integic and its successor in interest, NGIT, to continue maintaining possession of and/or using Pegasus' Software, and both Integic and NGIT have been advised of same.

51.    Pegasus is informed and believes and based thereon alleges that Integic copied and placed into and/or incorporated Pegasus' Software, or portions thereof, which are identical or substantially similar to Pegasus' Software, into one or more existing Builds or Releases of AHLTA and thereby infringed and infringes Pegasus' rights and copyrights in and to the Software. These and the other previously-mentioned similar acts of Integic were done knowingly and willfully.

52.    NGIT, as successor in interest to Integic by way of merger, is, by operation of law, liable for Integic's infringement and wrongful actions described in this count occurring before January 1, 2008.

53.    Further, upon and with completing its merger of Integic into itself and assuming Integic's operations, NGIT became and is also responsible and liable as the actor of the continuing wrongful infringement occurring after December 31, 2007 and which continues to today. As a result of the December 2007 merger, NGIT has been since January 1, 2008 and is now in position to control and does in fact control Pegasus' Software and source code, as well as the contracts, affiliations and relationships under which the infringement of same was accomplished and continues to be conducted and is the entity which, since January 1, 2008, has been in position to stop any continuing infringement and damages being committed against Pegasus and against whom any damages incurred by Pegasus since January 1, 2008 and against whom injunctive relief is warranted.

54.     The foreseeable and probable result of the aforesaid conduct of Integic and NGIT has been and will continue to deprive Pegasus of business and licensing of its Software, to deprive Pegasus of goodwill, and to injure Pegasus' relations with other potential licensors or authorized users of the Software, and to impose substantial expenses on Pegasus to counteract the aforesaid conduct.

55.     Pegasus is informed and believes and based thereon alleges that it has lost or will lose license revenue for its Software, and has sustained or will sustain damages as a result of Integic and NGIT's aforesaid wrongful conduct and its infringement of Pegasus' Software.

56.     NGIT was unjustly enriched by Integic's, and subsequently NGIT's own, copying, use, distribution, reproduction and marketing of the Software and works derived therefrom.

57.     Pegasus notified Integic, NGIT and NGC that Integic and NGIT misappropriated Pegasus' rights in the Software and requested that Integic and NGIT cease such activities.    Integic, NGIT and NGC, despite having knowledge of the misappropriation and infringement of Pegasus' Software, by among other things, Pegasus' giving Integic, NGIT and NGC notice thereof, have refused to cease infringement and have continued to infringe upon Pegasus' rights.

58.     Integic has used, copied and/or maintained possession of, and NGIT has and continues to use, copy and/or maintains possession of Pegasus' copyrighted Software, to the detriment of Pegasus, without an appropriate license agreement in place, and contrary to Pegasus' request to cease such activities, thereby gaining substantial

income and revenues for Integic and NGIT through the infringement of Pegasus'
copyright.

59.     Pegasus believes that unless enjoined by this Court, NGIT intends to
continue their course of conduct, and to wrongfully use, infringe upon, sell, license,
and/or otherwise profit from Pegasus' Software and works derived therefrom. As a direct
and proximate result of the acts of Integic and NGIT alleged herein, Pegasus has already
suffered irreparable damages and has sustained lost revenues, profits and/or monies.

60.     Pegasus has no adequate remedy at law to redress all of the injuries Integic
and NGIT caused and which NGIT continues to cause.  Pegasus will continue to suffer
irreparable damages and to sustain lost revenues, profits and/or monies until NGIT's
continuing infringement and actions alleged herein are enjoined by this Court.

61.     By means of the actions described herein, Integic and NGIT infringed and
NGIT will continue to infringe Pegasus's rights and copyrights in and relating to
Pegasus's Software.

62.     Pegasus is entitled to an injunction restraining NGIT, and its agents and
representatives and all persons acting in concert with it, from engaging in further such
acts in violation of the copyright laws.

63.     Pegasus is further entitled to recover from NGIT the damages it has
sustained and will sustain as a result of Integic's and NGIT's continuing wrongful acts as
herein described and alleged. The amount of such damages cannot be determined at this
time. Pegasus is further entitled to recover from NGIT the gains, profits and advantages
NGIT obtained as a result of its and/or Integic's wrongful acts as herein above described
and alleged, as well as any available statutory damages or attorneys' fees provided by the

Copyright Act. Pegasus at present is unable to ascertain the full extent of the gains, profits, and advantages Integic obtained by reason of their aforesaid acts of copyright infringement.

**WHEREFORE,** Plaintiff, Pegasus, demands trial by jury of all issues so triable and judgment against Northrop Grumman Information Technology, Inc as successor in interest to Integic Corporation and Northrop Grumman Information Technology, Inc., as applicable, as follows:

a.    NGIT be held to have infringed Pegasus' copyrights and Pegasus' Software;

b.    That NGIT, its agents, employees, representatives and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing Pegasus' copyrights in its Software or continuing to use, copy, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the Software or to participate or assist in any such activity;

c.    That NGIT, its agents, employees and representatives and all other persons in active concert or privity or in participation with them, be enjoined to return to Pegasus any originals, copies, facsimiles or duplicates of the Software in their possession, custody or control;

d.    That NGIT be enjoined to recall from the Department of Defense, and any other agency of the Federal government and all distributors, wholesalers, jobbers, dealers, retailers, non- Pegasus licensed customers and distributors and all others known to NGIT

any originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe any Pegasus copyright;

e.      That NGIT be enjoined to deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles or duplicates of any work shown by the evidence to infringe any Pegasus copyright;

f.      That NGIT be required to file with the Court and to serve on Pegasus within thirty (30) days after service of the Court's Order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which NGIT complied with the Court's Order;

g.      That judgment be entered for Pegasus and against NGIT, for Pegasus' actual damages according to proof, and for any additional profits attributable to infringements of Pegasus' copyright, in accordance with proof;

h.      That judgment be entered for Pegasus and against NGIT, for statutory damages based upon any and all acts of infringement, as well as increased damages for knowing and willful infringement, as available pursuant to the Copyright Act. 17 U.S.C §101 et seq.;

i.      That NGIT be required to account for all gains, profits and advantages derived from their acts of infringement or for their other violations of law;

j.      That all gains, profits and advantages derived by NGIT from its acts of infringement be deemed to be in constructive trust for the benefit of Pegasus;

k.      That Pegasus have judgment against NGIT for its costs and attorney's fees pursuant to 17 U.S.C. Section 505; and/or

l.    That the Court grant such other, further and different relief as the Court deems proper under the circumstances.

## COUNT III

### COPYRIGHT INFRINGEMENT
### (Violation of 17 U.S.C. Section 101 et seq., The Federal Copyright Act)
### AGAINST NORTH GRUMMAN INFORMATION TECHNOLOGY, INC.
### (VICARIOUS AND CONTRIBUTORY INFRINGEMENT)

64.    Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 31 above as if set forth herein.

65.    This count is an action for violation of the Federal Copyright Act against NGIT because NGIT has infringed, in a vicarious and contributory manner, Pegasus's rights and copyrights in and relating to Pegasus's Software.    NGIT's liability for vicarious and contributory infringement includes only the Transitional Period because of its knowledge regarding, its right and ability to supervise, its material contribution to and its receipt of direct financial benefit as a result of, the infringing conduct of Integic.

66.    Pegasus authored the ImagXpress Software, and the Software contains and is material wholly original and is copyrightable subject matter under applicable law immediately upon creation.

67.    Since authoring and developing the Software, Pegasus has been and still is the sole proprietor of all its rights, title and interest in and to all copyrights in the Software.

68.    Further, on or about July 3, 2007, Pegasus registered its copyright in its Software with the Register of the United States Copyright Office in Washington D.C. A copy of the copyright registrations numbered TXul-352-550 and TXul-361-085 are attached hereto as composite Exhibit "C," thus providing Pegasus additional specific

rights for the enforcement of its copyright and redress for any infringement thereof. Pegasus has complied in all respects with the Copyright Act, 17 U.S.C. Section 101, et seq. (the "Copyright Act").

69.     While Pegasus permitted Integic limited rights to use the Software pursuant to the License Agreement, Pegasus retained all ownership and copyright in and to the Software, and Integic's rights to use the Software were limited to the terms and conditions provided in the License.

70.     As described in paragraphs 35 through 40, Integic used the Software in a manner which is outside of and in violation of the License.  Moreover, as described in paragraph 41, the License Agreement terminated prior to the filing of this action, because of Integic's actions in violation of the License, thus terminating any arguable right of Integic or NGIT, as Integic's successor, to continue using and/or maintaining possession of Pegasus' Software, and Integic and NGIT have been advised of such.

71.     Pegasus is informed and believes and based thereon alleges that Integic copied and placed into and/or incorporated Pegasus' Software, or portions thereof, which are identical or substantially similar to Pegasus' Software, into one or more existing Builds or Releases of AHLTA and thereby infringed and infringes Pegasus' rights and copyrights in and to the Software. These and the other previously-mentioned similar acts of Integic were done knowingly and willfully.

72.     Pegasus is informed and believes and based there on alleges that NGIT, subsequent to the 2005 acquisition of Integic and throughout the entire Transitional Period, had the right and ability to supervise, direct and control Integic and Integic employees, and in fact did supervise, direct and control Integic and Integic employees,

generally and regarding the AHLTA project, through direct and indirect reports requirements, chain of command, interlocking officers and payroll control.

73.     On information and belief during the Transitional Period Integic officers and employees reported to employees and officers of NGIT, through joint meetings, teleconferences, face-to-face meetings and intra-office and interoffice emails.    On information and belief NGIT was responsible for billing, invoicing and collections for the services of Integic employees, as well as the payroll for Integic employees (different Integic employees apparently transferred to NGIT at different times) during the Transitional Period, and, as a result of ongoing supervision and evaluation of Integic officers and employees, had the right and ability to promote, demote, transfer and/or terminate any Integic employee and/or increase or decrease the salary of the same.

74.     NGIT, subsequent to the 2005 acquisition of Integic and throughout the entire Transitional Period, had knowledge of and materially participated in Integic's improper and unauthorized use of Pegasus' Software, whether in active concert or privity or in participation with Integic by approving and authorizing the copying, placing into and inclusion of the Software in certain Builds or Releases of AHLTA, which may have been deployed to MTFs and other locations worldwide.    Upon information and belief, such knowledge, approval and authorization of NGIT of the prospective, ongoing and future widespread dissemination of the offending Builds or Releases of AHLTA was obtained by, at minimum, internal correspondence with Integic, including through routine and ordinary reports by interlocking directors, officers and employees or through extraordinary supervision of the AHLTA project.

75.    Additionally, Pegasus notified Integic, NGIT and NGC that Integic and NGIT misappropriated Pegasus' rights in the Software and requested that Integic and NGIT cease such activities. Integic, NGIT and NGC, despite having knowledge of the misappropriation and infringement of Pegasus' Software, by among other things, Pegasus' giving Integic, NGIT and NGC notice thereof, have refused to cease infringement and have continued to infringe upon Pegasus' rights, and released such offending Builds or Releases of AHLTA after Pegasus' notification.

76.    Pegasus is informed and believes and based thereon alleges that NGIT, through its direct or indirect ownership received a financial benefit as a result of Integic's improper and unauthorized use of Pegasus' Software, wholly independent from the financial benefit NGIT received from its direct participation in the improper and unauthorized use of Pegasus' Software during the Transitional Period and today.

77.    The result of the aforesaid conduct of NGIT has been to deprive Pegasus of business and licensing of its Software, to deprive Pegasus of goodwill, and to injure Pegasus' relations with other potential licensors or authorized users of the Software, and to impose substantial expenses on Pegasus to counteract the aforesaid conduct.

78.    Pegasus is informed and believes and based thereon alleges that it has lost or will lose license revenue for its Software, and has sustained or will sustain damages as a result of NGIT's aforesaid wrongful conduct and its infringement of Pegasus' Software.

79.    NGIT was unjustly enriched by Integic's copying, use, distribution, reproduction and marketing of the Software and works derived therefrom.

80.    Integic used Pegasus' copyrighted Software, to the detriment of Pegasus, without an appropriate license agreement in place, and contrary to Pegasus' request to

cease such activities, thereby gaining substantial income and revenues for Integic and NGIT through the infringement of Pegasus' copyright.

81.    As a direct and proximate result of the acts of NGIT alleged above, Pegasus has and will continue to suffer irreparable damages and has sustained lost revenues, profits and/or monies.

82.    Pegasus is further entitled to recover from NGIT the damages it has sustained a as a result of NGIT's wrongful acts as herein described and alleged. The amount of such damages cannot be determined at this time. Pegasus is further entitled to recover from NGIT the gains, profits and advantages NGIT has obtained as a result of its wrongful acts as herein above described and alleged, as well as any available statutory damages or attorneys' fees provided by the Copyright Act. Pegasus at present is unable to ascertain the full extent of the gains, profits, and advantages NGIT have obtained by reason of their aforesaid acts of copyright infringement.

**WHEREFORE,** Plaintiff, Pegasus, demands trial by jury of all issues so triable and judgment against Defendant Northrop Grumman Information Technology, Inc., as follows:

a.    Defendant NGIT be held to have infringed Pegasus' copyrights and Pegasus' Software;

b.    That judgment be entered for Pegasus and against NGIT, for Pegasus' actual damages according to proof, and for any additional profits attributable to infringements of Pegasus' copyright, in accordance with proof;

c.    That judgment be entered for Pegasus and against NGIT, for statutory damages based upon NGIT's acts of infringement, as well as increased damages for

knowing and willful infringement, as available pursuant to the Copyright Act. 17 U.S.C §101 et seq.;

d.     That NGIT be required to account for all gains, profits and advantages derived from their acts of infringement or for their other violations of law;

e.     That all gains, profits and advantages derived by NGIT from its acts of infringement be deemed to be in constructive trust for the benefit of Pegasus;

f.     That Pegasus have judgment against NGIT for its costs and attorney's fees pursuant to 17 U.S.C. Section 505; and/or

g.     That the Court grant such other, further and different relief as the Court deems proper under the circumstances.

**COUNT IV**

**COPYRIGHT INFRINGEMENT**
**(Violation of 17 U.S.C. Section 101 et seq., The Federal Copyright Act)**
**AGAINST NORTH GRUMMAN CORPORATION**
**(VICARIOUS AND CONTRIBUTORY INFRINGEMENT)**

83.     Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 31, and paragraphs 71 through 73 above as if set forth herein.

84.     This count is an action for violation of the Federal Copyright Act against NGC because NGC has and continues to infringe, in a vicarious and contributory manner, Pegasus's rights and copyrights in and relating to Pegasus's Software.  NGC's vicarious and contributory infringement was committed from the time of NGIT's acquisition of Integic through today because of NGC's knowledge regarding, its right and ability to supervise, its material contribution to and its receipt of direct financial benefit as a result of, the infringing conduct of both Integic (during its existence) and NGIT, including the infringing conduct of NGIT which continues.

85.    Pegasus authored the ImagXpress Software, and the Software contains and is material wholly original and is copyrightable subject matter under applicable law immediately upon creation.

86.    Since authoring and developing the Software, Pegasus has been and still is the sole proprietor of all its rights, title and interest in and to all copyrights in the Software.

87.    Further, on or about July 3, 2007, Pegasus registered its copyright in its Software with the Register of the United States Copyright Office in Washington D.C. (a copy of the copyright registrations numbered TXul-352-550 and TXul-361-085 are attached hereto as composite Exhibit "C") thus providing Pegasus additional specific rights for the enforcement of its copyright and redress for any infringement thereof. Pegasus has complied in all respects with the Copyright Act, 17 U.S.C. Section 101, et seq. (the "Copyright Act").

88.    While Pegasus permitted Integic limited rights (to which NGIT would have succeeded as the successor to Integic) to use the Software pursuant to the License Agreement, Pegasus retained all ownership and copyright in and to the Software, and Integic's (and NGIT's) right to use the Software was limited to the terms and conditions provided in the License.

89.    As described in paragraphs 35 through 40, Integic and NGIT used, copied and/or maintained possession of the Software in a manner which is outside of and in violation of the License. Moreover, as described in paragraph 41, the License Agreement terminated prior to the filing of this action, because of Integic's actions in violation of the License, thus terminating any arguable right of Integic and/or NGIT to continue using or

34

maintaining possession of Pegasus' Software, and NGC has been advised of such. Pegasus is informed and believes and based thereon alleges that NGC personnel were aware of and facilitated the continued use of Pegasus' Software. Due to the importance of AHLTA, NGC personnel were kept apprised by daily email reports pertaining to the AHLTA project generally and specifically as to the to inclusion of Pegasus' Software, the issues surrounding the copying and placement of Pegasus' Software in AHLTA and Pegasus' inquiries, complaints and disputes regarding the same. NGC promotes and advertises itself as the developer and provider of AHTLA and is the recipient of financial and reputational benefits from its further development, testing, implementation, user documentation, training, support and upgrades. AHLTA, through a multitude of contracts, pr-motions, follow-up projects and support was and is currently a key revenue stream for NGC and benefits NGC. NGC reports and boasts its successes on AHLTA and accompanying revenues it realizes on the AHLTA project in its news releases, website and public filings. The dissemination of the offending AHLTA Builds and Releases with Pegasus' Software was important to NGC so that the schedule of the project was maintained and its client (the Department of Defense) was satisfied that all integral components of the AHLTA were included. Pegasus' Software was the basis of such an integral component, and, therefore, its inclusion necessary to meet the DOD's AHLTA requirements. The government-client contact point for the AHLTA project required certain timetables and criteria, including the component of AHLTA which Pegasus' Software was critical to, for certain Builds and Releases of AHLTA, and to satisfy the same, NGC and NGIT went forward with the copying, placement and inclusion of Pegasus' Software in AHLTA. Since the merger of Integic into NGIT,

NGIT with the knowledge, support and approval of NGC (and the benefit of NGC) has continued the copying, use and/or possessing of Pegasus' Software in violation of and without any arguable right under the License Agreement to do so. Such violations and breaches by NGIT continue and are ongoing.

90.    Pegasus is informed and believes and based thereon alleges that NGC, subsequent to the 2005 acquisition of Integic, throughout the entire Transitional Period, had the right and ability to supervise, direct and control Integic and Integic employees, and in fact did supervise, direct and control Integic and Integic employees, generally and regarding the AHLTA project, through direct and indirect reports requirements, chain of command, interlocking officers and payroll control. NGC's ability to supervise the AHLTA project included the direct supervision over the copying, placement and inclusion of the Pegasus Software into certain AHLTA Builds and Releases, which may have been deployed to MTFs and other locations worldwide. NGC's supervision also consisted of legal advice and legal decision making further approving and condoning the infringing conduct. Additional personnel who enabled the dissemination and installed the offending Builds and Releases of AHLTA which include Pegasus' Software have testified they may have even been actually been employed by NGC. NGC's further supervision is reflected in daily interactions with NGC that encompassed guidance, support and decision-making ability on behalf of NGC with regard to the copying, inclusion and placement of the Software in certain Builds and Releases of AHLTA. Communications from Integic and NGIT personnel to NGC personnel discussed Pegasus' Software and the inclusion of it in the AHLTA project after Pegasus had notified the Integic, NGIT and NGC that the nature of the Pegasus Software's inclusion exceeded the

scope of the License. Integic, NGIT and NGC employees conducted routine meetings to discuss the inclusion of Pegasus Software in continuing Builds and Releases of AHLTA, despite Pegasus' inquiries and demands otherwise, and direction and decision-making was made by NGC personnel to ignore or refuse Pegasus' requests for the cessation of the improper copying and inclusion of Pegasus' Software in AHLTA and compliance with the License.

91.    Throughout all material times herein NGC directly or indirectly owned NGIT as a subsidiary and controlled and supervised NGIT's control of Integic during the Transitional Period and continues to so control NGIT. Pegasus is informed and believes and based there on alleges that NGC, at all times material hereto had and has the right and ability to supervise, direct and control NGIT and NGIT employees, and in fact did and does supervise, direct and control NGIT and NGIT employees, generally and directly and specifically regarding the AHLTA project and with regard to the copying, placement and inclusion of Pegasus' Software in certain Builds and Releases of AHLTA, through direct and indirect reports requirements, chain of command, interlocking officers and payroll control, and NGC continues to do so.

92.    Further, NGC from time to time, exercised and exercises its ability to control wholly owned subsidiaries and acquires or disposes of such subsidiaries and routinely realigns contracts, programs, officers and/or employees among and within its wholly owned subsidiaries, which it refers to as "operating segments." NGIT operates as one such "segment" of NGC and NGC regularly disregards the separate corporate existence of NGIT in sales, marketing, press releases, letterhead, email addresses, paystubs and paychecks and other materials. Additionally, NGC and NGIT have

interlocking officers, including, but not limited to, Linda A. Mills, a corporate vice president of NGC and president of NGIT, and James O'Neill, a corporate vice president of NGC and a corporate vice president of NGIT. Pegasus specifically contacted Mr. O'Neill regarding Pegasus' concerns over the copying, placement and inclusion of the Software in AHLTA. On information and belief Mr. O'Neill inquired to NGC personnel on the progress and status of the AHLTA project and Pegasus' inclusion and assembled further personnel of NGC and NGIT to meet and discuss the wrongful copying, placement and inclusion of the Software in certain Builds and Releases of AHLTA, but NGC further permitted and facilitated the continued wrongful copying, placement and inclusion of the Pegasus Software in AHLTA.

93.    Pegasus is informed and believes and based there on alleges that NGC, subsequent to the 2005 acquisition of Integic and throughout the entire Transitional Period and continuing to the present, had and has knowledge of and materially participated in Integic's and NGIT's improper and unauthorized use of Pegasus' Software, whether in active concert or privity or in participation with Integic and NGIT by approving and authorizing the copying, downloading, placing into and inclusion of the Software in certain Builds or Releases of AHLTA, which may have been deployed to MTFs and other locations worldwide. Upon information and belief such knowledge, approval and authorization of NGC of the prospective, ongoing and future widespread dissemination of the offending Builds or Releases of AHLTA was obtained by, at minimum, internal correspondence with Integic and NGIT, including through routine and ordinary reports by interlocking directors, officers and employees or through extraordinary supervision of the AHLTA project. NGC employees had the authority,

and, indeed, exercised such authority, to approve the further inclusion of Pegasus' Software or dissemination of Builds and Releases of AHLTA that included Pegasus' Software and such approval was given with full knowledge that Pegasus' objected to the copying, placement, incorporation and inclusion of the Software in the AHLTA Builds and Releases. NGC communicated to Pegasus that NGC knew of and had reviewed the copying, placement and inclusion of Pegasus' Software in certain Builds and Releases of AHLTA, approved and condoned of the inclusion of Pegasus' Software and authorized the dissemination and deployment of such offending Builds or Releases to MTFs and other locations worldwide.

94.    Pegasus notified Integic, NGIT and NGC that Integic and NGIT misappropriated Pegasus' rights in the Software and requested that Integic and NGIT cease such activities.    Integic, NGIT and NGC, despite having knowledge of the misappropriation and infringement of Pegasus' Software, by among other things, Pegasus' giving Integic, NGIT and NGC notice thereof, have refused to cease infringement and have continued to infringe upon Pegasus' rights and released such offending Builds or Releases of AHLTA after Pegasus' notification. On information and belief, NGC was intimately involved in the cost/benefit analysis of the dissemination of the offending Builds and Releases of AHLTA worldwide that included the copying, placement and inclusion of the Software and whether such copying, placement and inclusion was beneficial regardless of the wrongful nature. NGC controlled that decision and ultimately made or approved the decision to continue the placement of Pegasus Software in AHLTA or disseminate the offending Builds and Releases. NGC and NGC personnel met and engaged in discussions of risk mitigation strategies concerning the

wrongful copying, placement and inclusion of the Software in certain Builds and Releases of AHLTA.

95.    Pegasus is informed and believes and based thereon alleges that NGC, through its indirect ownership of Integic and NGIT received and continues to receive a financial benefit as a result of Integic's improper and unauthorized use of Pegasus' Software, wholly independent from the financial benefit NGIT received or receives from its direct participation in the improper and unauthorized use of Pegasus' Software during the Transitional Period and continuing today. AHLTA is a key revenue stream for NGC and NGIT, and the dissemination of the offending Builds and Releases with Pegasus' Software was important to NGIT and NGC so that the schedule of the project was maintained and the client was satisfied that all integral components of the AHLTA were included. Pegasus Software was the basis of such an integral component, and, therefore, its inclusion necessary to meet the AHLTA requirements. As a result the copying, placement and inclusion of Pegasus Software in certain Builds and Releases of AHLTA was financially beneficial to both NGC and NGIT.

96.    The foreseeable and probable result of the aforesaid conduct of NGC has been and will continue to be to deprive Pegasus of business and licensing of its Software, to deprive Pegasus of goodwill, and to injure Pegasus' relations with other potential licensors or authorized users of the Software, and to impose substantial expenses on Pegasus to counteract the aforesaid conduct.

97.    Pegasus is informed and believes and based thereon alleges that it has lost or will lose license revenue for its Software, and has sustained or will sustain damages as a result of NGC's aforesaid wrongful conduct and its infringement of Pegasus' Software.

98.    NGC was unjustly enriched by Integic's, and was and continues to be unjustly enriched by NGIT's, copying, use, distribution, reproduction and marketing of the Software and works derived therefrom.

99.    Integic and NGIT used, and NGIT continues to use, Pegasus' copyrighted Software, to the detriment of Pegasus, without an appropriate license agreement in place, and contrary to Pegasus' request to cease such activities, thereby gaining substantial income and revenues for Integic, NGIT and NGC through the infringement of Pegasus' copyright.

100.    Pegasus believes that unless enjoined by this Court, NGC will continue its course of conduct, and will wrongfully vicariously and contributorily with NGIT use, infringe upon, sell, license, and/or otherwise profit from Pegasus' Software and works derived therefrom. As a direct and proximate result of the acts of NGC and NGIT alleged herein, Pegasus has already suffered irreparable damages and has sustained lost revenues, profits and/or monies.

101.    Pegasus has no adequate remedy at law to redress all of the injuries NGC and NGIT have caused and intend to cause by their conduct.  Pegasus will continue to suffer irreparable damages and to sustain lost revenues, profits and/or monies until NGC's and NGIT's actions alleged herein are enjoined by this Court.

102.    Pegasus is entitled to an injunction restraining NGC, and its agents and representatives and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

103.    Pegasus is further entitled to recover from NGC the damages it has sustained and will sustain as a result of NGC's wrongful acts as herein described and

alleged. The amount of such damages cannot be determined at this time. Pegasus is further entitled to recover from NGC the gains, profits and advantages NGC has obtained as a result of its wrongful acts as herein above described and alleged, as well as any available statutory damages or attorneys' fees provided by the Copyright Act. Pegasus at present is unable to ascertain the full extent of the gains, profits, and advantages NGC has obtained by reason of the aforesaid acts of copyright infringement.

**WHEREFORE,** Plaintiff, Pegasus, demands trial by jury of all issues so triable and judgment against Defendant Northrop Grumman Corporation., as follows:

a.    NGC be held to have infringed Pegasus' copyrights and Pegasus' Software;

b.    That NGC, its agents, employees, representatives and all other persons in active concert or privity or in participation with it, be enjoined from directly or indirectly infringing Pegasus' copyrights in its Software or continuing to use, copy, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the Software or to participate or assist in any such activity;

c.    That NGC, its agents, employees and representatives and all other persons in active concert or privity or in participation with it, be enjoined to return to Pegasus any originals, copies, facsimiles or duplicates of the Software in its possession, custody or control;

d.    That NGC be enjoined to recall from the Department of Defense, and any other agency of the Federal government and all distributors, wholesalers, jobbers, dealers, retailers, non- Pegasus licensed customers and distributors and all others known to NGC

any originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe any Pegasus copyright;

e.     That NGC be enjoined to deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles or duplicates of any work shown by the evidence to infringe any Pegasus copyright;

f.     That NGC be required to file with the Court and to serve on Pegasus within thirty (30) days after service of the Court's Order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which NGC complied with the Court's Order;

g.     That judgment be entered for Pegasus and against NGC, for Pegasus' actual damages according to proof, and for any additional profits attributable to infringements of Pegasus' copyright, in accordance with proof;

h.     That judgment be entered for Pegasus and against NGC, for statutory damages based upon any and all acts of infringement, as well as increased damages for knowing and willful infringement, as available pursuant to the Copyright Act. 17 U.S.C §101 et seq.;

i.     That NGC be required to account for all gains, profits and advantages derived from their acts of infringement or for their other violations of law;

j.     That all gains, profits and advantages derived by NGC from its acts of infringement be deemed to be in constructive trust for the benefit of Pegasus;

k.     That Pegasus have judgment against NGC for its costs and attorney's fees pursuant to 17 U.S.C. Section 505; and/or

1.      That the Court grant such other, further and different relief as the Court

deems proper under the circumstances.

## COUNT V

### VIOLATION OF FLORIDA TRADE SECRETS ACT
### AGAINST NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. as
### successor in interest to Integic Corporation and NORTHROP GRUMMAN
### INFORMATION TECHNOLOGY, INC.

104.    Plaintiff Pegasus hereby re-alleges and incorporates by reference

paragraphs 1 through 31 above as if set forth herein.  This count is for violation of the

Florida Uniform Trade Secrets Act, Chapter 688, Florida Statutes, against NGIT as

successor in interest to Integic with regard to violations of the Florida Uniform Trade

Secrets Act occurring before January, 1, 2008 and against NGIT as the actor of the

continuing violations of the Florida Uniform Trade Secrets Act occurring or committed

on or after January 1, 2008 described herein.

105.    Pegasus authored the ImagXpress Software, and the Software contains

material wholly original and owned by Pegasus.  The Software is built upon a source

code, the human-readable form of instructions/programming statements that were created

or programmed by Pegasus to build the Software ("Source Code").

106.    The Source Code is a trade secret of Pegasus and Pegasus has maintained

the confidentiality and secrecy of the Source Code through considerable expense and

efforts.  Among other methods of protecting the trade secret Source Code, Pegasus: has

never publicly displayed the trade secret Source Code, severely limits those employees

who have access to it, and provides restrictions in its license agreement regarding the

Source Code.  Promulgating and enforcing the business practices to maintain the

confidentiality and concealment of the Source Code costs Pegasus money, time and

effort, and results in lost business opportunities and other economic development prospects and lost opportunities. In addition, Pegasus' application to the Copyright Office included a letter that specifically noted the Source Code contained in the Software is trade secret and was to be treated as trade secret and Pegasus otherwise took the appropriate steps to limit the disclosure of the Source Code consistent with the application procedures. The concealment of the Source Code provides Pegasus a competitive advantage over business peers who have not similarly spent the time, money and effort. Without wrongfully obtaining Pegasus' Source Code, a competitor might be unable to develop or duplicate the Source Code or even offer a competitive product at all.

107. The Source Code derives independent actual and potential economic value from not being known, and not being readily ascertainable by proper means, to other persons and entities who can obtain economic value from its disclosure or use. Pegasus expended considerable time, money and effort developing the Source Code. The Source Code was developed as a result of continuous effort on the part of Pegasus, through the knowledge and skill of its select few and highly skilled employees and built upon trial and error. Pegasus' time and effort expended developing the Source Code cost Pegasus money, time, lost business opportunities and other economic development prospects. Revealing the Source Code would, among other things, allow an outside party to learn about Pegasus' programming techniques and efficiencies resulted from Pegasus' considerable time and efforts, and, then, adapt the Source Code from the Software to use in their own profitable projects. Such sharing would limit, impede and/or deprive Pegasus of the ability to license and profit from its investment of money, time and effort in development of the Source Code. The ability of a competitor to duplicate the Source

Code without the same expenditures in time, money and effort would unfairly advantage the competitor(s) and disadvantage Pegasus and destroy Pegasus' developmental achievement.

108.    Integic obtained Pegasus' Software by downloading it pursuant to a License which, as more fully described in paragraphs 35 through 41, Integic, and NGIT (after January 1, 2008) have violated and ignored.  Further, Pegasus is informed and believes and based thereon alleges that while in possession of Pegasus' Software, Integic accessed or obtained Pegasus' Source Code and copied and placed the Source Code and/or Software in certain Builds or Releases of AHLTA.

109.    To date, several Builds or Releases of AHLTA containing Pegasus' Source Code have been deployed to over 100 MTFs or other locations worldwide, such that, at minimum, there has been the copying and distribution of over Sixty-One Thousand (61,000) copies of Pegasus' Source Code.

110.    NGIT, as successor in interest to Integic by way of merger, is, by operation of law, liable for Integic's violation of the Florida Uniform Trade Secrets Act and wrongful actions described in this count occurring before January 1, 2008.

111.    Further, upon and with completing its merger of Integic into itself and assuming Integic's operations, NGIT became and is also responsible and liable as the actor of the continuing violations of the Florida Uniform Trade Secrets Act occurring after December 31, 2007 and which continue to today. As a result of the December 2007 merger, NGIT has been since January 1, 2008 and is now in position to control and does in fact control Pegasus' Software and source code, as well as the contracts, affiliations and relationships under which the misappropriation of same was accomplished and

continues to be conducted and is the entity which, since January 1, 2008, has been in position to stop any continuing misappropriation and other wrongs and damages being committed against Pegasus and against whom any damages incurred by Pegasus since January 1, 2008 and against whom injunctive relief is warranted.

112. As a result of Integic's misappropriation and NGIT's continuing misappropriation of Pegasus' trade secret Source Code, Pegasus has suffered damages for actual loss and NGIT's unjust enrichment.

113. The total loss to plaintiff cannot be accurately measured. However, unless NGIT is enjoined from using Pegasus' trade secret Source Code and/or from disclosing the Source Code and associated information to others, Pegasus will suffer irreparable harm.

114. For the harm and loss suffered by Pegasus, and for harm and loss that will continue, but for the intervention of this Court, Pegasus has no adequate remedy at law. If NGIT is permitted to continue using Pegasus' trade secret Source Code, NGIT will have profited by its and Integic's (for which it is now responsible) own wrongs, and Pegasus' trade secret may be further disseminated by NGIT, resulting in additional damages to Pegasus that are unpredictable and unending.

**WHEREFORE,** Plaintiff, Pegasus, demands against Defendant, Northrop Grumman Information Technology, Inc., as successor in interest to Integic Corporation and Northrop Grumman Information Technology, Inc.:

a. that a temporary injunction be issued restraining NGIT and any agents, contractors and customers of NGIT, from directly or indirectly using for their own benefit the Source Code until Pegasus' right to a permanent injunction is determined;

b.    that a permanent injunction be ordered on final trial of this cause, enjoining NGIT and any of NGIT's agents, contractors and customers from directly or indirectly using the Source Code;

c.    that Pegasus be awarded judgment against NGIT for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, plus Pegasus' attorneys' fees and costs incurred pursuant to Chapter 688 of the Florida Statutes as well as costs of suit and prejudgment interest; and

d.    trial by jury and any and all other relief at law or equity this Court deems appropriate.

## COUNT VI

### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. Section 501.201 et seq.) AGAINST NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. as successor in interest to Integic Corporation and NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.

115.    Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 31 and paragraphs 35 through 41 above as if set forth herein. This count is an action for violation of the Florida Deceptive and Unfair Trade Practices Act against NGIT as successor in interest to Integic with regard to violations of the Florida Deceptive and Unfair Trade Practices Act committed before January, 1, 2008 and against NGIT as the current actor of the continuing violations of the Florida Deceptive and Unfair Trade Practices Act committed or occurring on or after January 1, 2008 and continuing as described herein.

116.    At all relevant times, there was in effect the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, et seq. of the Florida Statutes.

117.   Section 501.204(1) provides, in pertinent part:

> Unfair methods of competition, unconscionable acts
> or practices and unfair deceptive acts or practices in
> the conduct of any trade or commerce are hereby
> declared unlawful

118.   Integic engaged in business practices as recited above in paragraphs 1 through 31, paragraphs 35 through 41, paragraphs 51 through 58 and paragraphs 108 through 109 which are unlawful, unfair and deceptive acts and practices in violation of Section 501.201 et seq.

119.   The Builds or Releases of AHLTA containing Pegasus' Software is believed to be deployed to thousands of end users, including over one-hundred thousand military health service staff members (including those within the State of Florida), with no knowledge that they are actually using Pegasus' Software. Upon information and belief AHLTA impacts over 400 medical clinics and 400 dental clinics across the military health system (including those within the State of Florida), and, potentially, will be shared by the DoD, and integrated, with private health facilities.

120.   NGIT, as successor in interest to Integic by way of merger, is, by operation of law, liable for Integic's unfair business practices and wrongful actions described in this count occurring before January 1, 2008.

121.   Further, upon and with completing its merger of Integic into itself and assuming Integic's operations, NGIT became and is also responsible and liable as the actor of the continuing wrongful business practices occurring after December 31, 2007 and which continue to today. As a result of the December 2007 merger, NGIT has been since January 1, 2008 and is now in position to control and does in fact control Pegasus' Software and source code, as well as the contracts, affiliations and relationships under

which the abuse of same was accomplished and continues to be conducted and is the entity which, since January 1, 2008, has been in position to stop the continuing unfair business practices and other wrongs and damages being committed against Pegasus and against whom any damages incurred by Pegasus since January 1, 2008 and against whom injunctive relief is warranted.

122.    Such business practices have caused Pegasus irreparable injury.   Unless enjoined by this Court, NGIT will continue engaging in these acts and practices to Pegasus' immediate and irreparable detriment.

123.    Pegasus has been damaged as a proximate result of Integic's violation (for which NGIT is now responsible) and NGIT's continuing violation of the Florida Deceptive and Unfair Trade Practices Act, and Pegasus is entitled to an injunction against such continued deceptive and unfair trade practices pursuant to Fla. Stat. Section 501.211 (1).

**WHEREFORE,** Plaintiff, Pegasus, demands against Defendant, Northrop Grumman Information Technology, Inc., as successor in interest to Integic Corporation and Northrop Grumman Information Technology, Inc.:

a.    that a temporary injunction be issued restraining NGIT and any agents, contractors and customers of NGIT, from directly or indirectly using for its own benefit the Software and/or the Source Code until Pegasus' right to a permanent injunction is determined;

b.    that a permanent injunction be ordered on final trial of this cause, enjoining NGIT and any of NGIT's agents, contractors and customers from directly or indirectly using the Software and/or Source Code;

50

c.    that Pegasus be awarded judgment against NGIT for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, plus Pegasus' attorneys fees and costs incurred pursuant to Fla. Stat. Section 501.2105 (1) as well as costs of suit and prejudgment interest; and

d.    trial by jury and any and all other relief at law or equity this Court deems appropriate.

### COUNT VII

#### REVERSE PASSING OFF
#### (Violation of 15 U.S.C. Section 1051 et seq., The Lanham Act)
#### AGAINST NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. as successor in interest to Integic Corporation and NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.

124.    Plaintiff Pegasus hereby re-alleges and incorporates by reference paragraphs 1 through 31 and paragraphs 35 through 41 above as if set forth herein. This is a count for reverse passing off (also known as "reverse palming off") pursuant to the Lanham Act, 15 U.S.C. 1125(a) against NGIT as successor in interest to Integic with regard to violations of the Lanham Act committed or occurring before January, 1, 2008 and against NGIT as the current actor of the violations of the Lanham Act committed or occurring on or after January 1, 2008 and continuing as described herein.

125.    Pegasus protects its trademarks under Federal and State common law, and in addition, has filed for, obtained and maintained trademarks and associated protection of the marks "Pegasus" and "ImagXpress." Pegasus is in the process of federally registering its trademark "ImagXpress" with the United States Patent and Trademark Office. The serial number for its application is 78409451. The date of first use in interstate commerce for the trademark "ImagXpress" is May 1, 1998. On October 17,

51

2006, Pegasus duly filed and thereafter registered its trademarks "Pegasus" and "Pegasus and Design" with the United States Patent and Trademark Office. Each of these trademarks has a date of first use in interstate commerce of September 30, 1991. The registration numbers are 3155452 and 3155453. Copies of the foregoing trademark registrations filed with the United States Patent and Trademark Office are attached hereto as composite Exhibit "D".

126.    As further set forth herein, Pegasus authored the ImagXpress Software. Since authoring and developing the Software, Pegasus has been and remains the sole proprietor of all its rights, title and interest in and of all trademarks of the Software, and required authorized licensees to provide proper designation and recognition of the origin, ownership and trademark of Pegasus and ImagXpress in and regarding the Software.

127.    As set forth in paragraphs 37 and 38 above, the License Agreement required that all licensees "include a statement substantially similar to the following within derivative work's documentation and about box:  "This product contains portions of imaging code owned by Pegasus Imaging Corporation, Tampa, FL (www.pegasusimaging.com)."

128.    Pegasus is informed and believes and based thereon alleges that Integic copied and placed Pegasus' Software in AHLTA and the Software to this day is included in Builds or Releases as a wholly independent aspect or a part of AHLTA, though Integic did so by merely repackaging the Software without making and providing for the proper designation or recognition of Pegasus' marks or that the creator, developer and owner of the Software is Pegasus.

129.    Such a failure to so truthfully disclose and designate that the Software originated and is owned by Pegasus, by, among other things, omitting that Pegasus created and has ownership of a component of AHLTA and/or falsely representing the Software as a component of a system or application the parts of which were wholly created by Integic, and/or omitting the proper and truthful trademark of Pegasus of the Software (ImagXpress) has and will cause consumer confusion.

130.    The Builds or Releases of AHLTA containing Pegasus' Software is believed to be deployed to thousands of end users, including over one-hundred thousand military health service staff members (including those within the State of Florida), with no knowledge that they are actually using Pegasus' Software.  Upon information and belief AHLTA impacts over 400 medical clinics and 400 dental clinics across the military health system (including those within the State of Florida), and, potentially, will be shared by the DoD, and integrated, with private health facilities.

131.    NGIT, as successor in interest to Integic by way of merger, is, by operation of law, liable for Integic's infringement and wrongful actions described in this count occurring before January 1, 2008.

132.    Further, upon and with completing its merger of Integic into itself and assuming Integic's operations, NGIT became and is also responsible and liable as the actor of the continuing wrongful infringement occurring after December 31, 2007 and which continues to today. As a result of the December 2007 merger, NGIT has been since January 1, 2008 and is now in position to control and does in fact control Pegasus' Software and source code, as well as the contracts, affiliations and relationships under which the infringement of same was accomplished and continues to be conducted and is

the entity which, since January 1, 2008, has been in position to stop any continuing trademark infringement and other wrongs and damages being committed against Pegasus and against whom any damages incurred by Pegasus since January 1, 2008 and against whom injunctive relief is warranted.

133.    As a direct result of Integic's failure and NGIT's continued failure to recognize Pegasus' proper trademarks and origin of the Software, and/or otherwise false designating or omitting Plaintiff's trademarks and creation and ownership of the Software, Plaintiff has and continues to suffer damages in the form of lost profits, revenues and incalculable injury to its trademarks through a likelihood of confusion.

134.    The total loss to plaintiff cannot be accurately measured at this time. However, unless NGIT is enjoined from continuing the course of action described herein and further proceeding to falsely designating or failing to designate at all the origin of the Software (through misrepresentation or omission), Pegasus will suffer irreparable harm.

135.    For the harm and loss suffered by Pegasus, and for harm and loss that will continue, but for the intervention of this Court, Pegasus has no adequate remedy at law. If NGIT is permitted to continue using Pegasus' Software without proper designation of origin, NGIT will realize additional profits by its own (and Integic's prior) wrongs, and Pegasus' will be further damaged.

**WHEREFORE,** Plaintiff, Pegasus, demands against Defendant, Northrop Grumman Information Technology, Inc., as successor in interest to Integic Corporation and Northrop Grumman Information Technology, Inc.:

a.    that a temporary injunction be issued restraining NGIT and any agents, contractors and customers of NGIT, from directly or indirectly using for their own benefit

the Software until Pegasus' right to a permanent injunction is determined and that a permanent injunction be ordered on final trial of this cause, enjoining NGIT and any of NGIT's agents, contractors and customers from directly or indirectly using the Software pursuant to 15 U.S. C. Section 1116 (a); and

      b.    that Pegasus be awarded judgment against NGIT for all damages available to Pegasus including compensatory damages, lost profits, revenues, loss of license fees, punitive damages, prejudgment interest and Pegasus' attorneys' fees and costs incurred pursuant to 15 U.S. C. Section 1117 (a); and

      c.    trial by jury and any and all other relief at law or equity this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Pegasus, demands trial by jury of all rights, claims and issues so triable.

Dated this 15th day of December, 2008.

             **ALLEN DELL, P.A.**

             **s/ David D. Ferrentino**
             David D. Ferrentino, Esq. (Trial Counsel)
             Florida Bar No.: 908754
             dferrentino@allendell.com
             Dave Forziano, Esq.
             Florida Bar No.: 025755
             dforziano@allendell.com
             Richard A. Harrison
             Florida Bar No.: 602493
             rharrison@allendell.com
             Donald W. Stanley, Jr., Esq.
             Florida Bar No.: 231525
             dstanley@allendell.com
             ALLEN DELL, P.A.
             202 South Rome Avenue, Suite 100

Tampa, Florida  33606
Telephone: (813) 223-5351
Facsimile:  (813) 229-6682
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing **Plaintiff's Second Amended Complaint for Damages, Injunctive Relief  and Demand for Jury Trial** was furnished by U.S. Mail to: Lawrence B. Lambert, Esq., Lash and Goldberg, LLP, 100 SE 2nd Street, Suite 1200, Miami, Fl, 33131; and Gary A. Orseck, Esq. and Ariel Lavinbuk, Esq., Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, 1801 K Street, Suite 411L, Washington, DC 20006 this 15th day of December, 2008.

**s/ David D. Ferrentino**

License Agreement

---

*ImagXpress*

# License Agreement

Visit the Pegasus Imaging Web site, pegasusimaging.com/licensing.htm, for the latest and most complete information about licensing agreements.

---

## Pegasus Imaging Corporation SOFTWARE LICENSE AGREEMENT

GRANT OF LICENSE. This Pegasus Imaging Corporation, ("PEGASUS") Agreement ("License") permits Licensee ("LICENSEE") the right to use one copy of a properly registered Pegasus Development Toolkit ("TOOLKIT") for development purposes on any single computer, provided the TOOLKIT is in use on only one computer at any time. TOOLKIT is "in-use" on a computer when it is loaded into temporary memory (i.e. RAM) or installed into he permanent memory (i.e. hard disk, CD-ROM, or other storage device) of that computer.

REDISTRIBUTION OF THE TOOLKIT RUNTIMES. To obtain rights to distribute TOOLKIT runtimes as part of the LICENSEE's software application or derivative works ("PRODUCT"), you must acknowledge and uphold this License Agreement and agree to notify PEGASUS immediately of any changes in status or violations. PEGASUS grants the LICENSEE, a limited, non-exclusive, right to use, reproduce, display or otherwise distribute or transfer ONE (and only one) copy of the TOOLKIT runtime, as an integral part of PRODUCT, in executable form only to a single CPU, (in the case of ISIS® scanning support; and/or, SmartScanXpress (ICR, OCR, Barcode, MICR); and/or, Pegasus Advanced technology (PICTools products, MedXpress, Image Delivery Protocol, Server Image Reformatting, PICVideo and/or Video Technology) (see Advanced Technology License) this license page does not apply). In all other cases, PEGASUS grants the LICENSEE, a limited, non-exclusive, right to use, reproduce, display or otherwise distribute or transfer limited copies of TOOLKIT runtimes, as an integral part of PRODUCT, in executable form only, provided that:

a.  LICENSEE agrees to not use Pegasus ISIS® SUPPORT; AND/OR, Pegasus SMARTSCANXPRESS (ICR, OCR, Barcode, MICR) TOOLS; AND/OR, Pegasus Advanced Technology (PICTools products, MedXpress, Image Delivery Protocol, Server Image Reformatting, PICVideo and/or Video Technology).

b.  The total annual PRODUCT(s) sales [derivative works, software application(s) and/or software installation (s)], which includes TOOLKIT runtimes, does not exceed two-hundred fifty thousand dollars ($250,000 US), in any year.

c.  The use is for corporate in-house development project(s), purchase of the Pegasus development kit(s) grants a single site license with TOOLKIT runtime distribution up to 50 CPU's, within derivative work(s), within a single site (physical location).

d.  The total annual TOOLKIT runtimes of LICENSEE's derivative works [software application(s) and/or software installation(s)] does not exceed client distribution greater than 100,000 or if the distribution is untrackable as in an internet distribution model, shareware model or freeware distribution model.

e.  The LICENSEE's product is targeted to end-users.

f.  LICENSEE is not developing a client/server based solution which involves multiple servers or sites, or remote (off- site) clients.

g.  LICENSEE is not developing an internet/intranet server based solution which involves remote (off-site) clients (such as with Cabinet files, JAR files, COM objects, Active X controls, JAVA applets, or Browser plug-ins).

h.  The LICENSEE's PRODUCT is not a development tool, PRODUCT's that can be used in other products (such as ActiveX controls) are considered to be development tools.

i.  LICENSEE is not using PEGASUS' name, logo, or trademarks to market PRODUCT without prior written approval of PEGASUS.

j.  LICENSEE agrees to indemnify, hold harmless, and defend PEGASUS from and against any claims or lawsuits, including attorney's fees, that arise or result from the use or distribution of PRODUCT.

k.  Only the TOOLKIT runtimes can be distributed. Distribution of the TOOLKIT development kit, documentation, source code, or the distribution unlock codes, is a violation of this agreement.



License Agreement                                                                        Page 2 of 2

I.  LICENSEE includes a statement substantially similar to the following within derivative Work's documentation and about box: "This product contains portions of imaging code owned by Pegasus Imaging Corporation, Tampa, FL, (www.pegasusimaging.com)."

If ANY of the above terms are not applicable to LICENSEE's situation, or any of the above cannot be complied with, or LICENSEE needs modifications to this license, (for any reason) then LICENSEE shall obtain an expanded direct license from PEGASUS for derivative works, (available by phone at: 813-875-7575, x321, by email at: sales@jpg.com or by fax at: 813-875-7705).

PEGASUS reserves the right to charge the LICENSEE up to ten times the normal license price for the use of each unlicensed copy of PRODUCT. The license granted herein and all of your rights to use or maintain possession of TOOLKIT shall terminate immediately upon breach of any material provisions of this Agreement.

This license grants rights to LICENSEE for only the PEGASUS code (TOOLKIT) mentioned above and does not convey any other rights of use or distribution to PEGASUS technology.

COPYRIGHT: The Software is owned by PEGASUS or Pegasus Imaging Corporation and is protected by United States copyright laws and international treaty provisions. LICENSEE may not remove or alter the copyright notice from any copy of the Software or any copy of the written materials, accompanying the Software.

OTHER RESTRICTIONS: This PEGASUS License Agreement is LICENSEE proof of license to exercise the rights granted herein and must be retained by LICENSEE. LICENSEE may not rent, lease or transfer TOOLKIT or parts thereof. LICENSEE may not reverse engineer, decompile or disassemble TOOLKIT.

NO WARRANTY. ANY USE BY LICENSEE OF THE SOFTWARE IS AT THE LICENSEE'S OWN RISK. THE SOFTWARE IS PROVIDED FOR USE ONLY WITH WINDOWS PRODUCTS AND RELATED APPLICATION SOFTWARE AND/OR HARDWARE PRODUCTS. THE SOFTWARE IS PROVIDED FOR USE "AS IS" WITHOUT WARRANTY OF ANY KIND. TO THE MAXIMUM EXTENT PERMITTED BY LAW, PEGASUS DISCLAIMS ALL WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT. PEGASUS IS NOT OBLIGATED TO PROVIDE ANY UPDATES TO THE SOFTWARE.

NO LIABILITY FOR CONSEQUENTIAL DAMAGES. In no event shall PEGASUS be liable for any damages whatsoever (including, without limitation, incidental, direct, indirect and consequential damages, damages for loss of business profits, business interruption, loss of business information, or other pecuniary loss) arising out of the use or inability to use this PEGASUS product. even if PEGASUS has been advised of the possibility of such damages. Because some states/countries do not allow the exclusion or limitation of liability for consequential or incidental damages, the above limitation may not apply to LICENSEE.

INDEMNIFICATION BY LICENSEE. If LICENSEE distributes TOOLKIT in violation of this Agreement, LICENSEE agrees to indemnify, hold harmless and defend PEGASUS and its suppliers from and against any claims or lawsuits, including attorney's fees that arise or result from the use or distribution of TOOLKIT in violation of this Agreement.

This Agreement is governed by the laws of the State of Florida. The program and data contained in this TOOLKIT Product are provided with Restricted Rights. Use, duplication, or disclosure by the U.S. Government is subject to restrictions as set forth in FAR 52.227-14 (Alternate III) or subparagraph (c)(1)(II) of the rights in technical data and computer software clause at 252.227-7013. Manufacturer is Pegasus Imaging Corporation, 4522 Spruce Street, Tampa, FL, 33607.

For questions concerning this Agreement, or to contact PEGASUS for any reason, please contact Pegasus Imaging Corporation by phone 1-813-875-7575 x321 or email sales@jpg.com.

© 1997-2004 Pegasus Imaging Corp. All rights reserved.

ARTICLES OF MERGER

OF

INTEGIC CORPORATION
a Virginia corporation,

INTO

NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.,
a Delaware corporation

The undersigned corporations, pursuant to Title 13.1, Chapter 9, Article 12 of the Code of Virginia, hereby execute the following articles of merger and set forth:

ONE

PLAN OF MERGER

1.    Integic Corporation, a corporation organized under the laws of the state of Virginia, shall be merged with and into its parent, Northrop Grumman Information Technology, Inc., a corporation organized under the laws of the state of Delaware, the provisions of which permit the merger of a subsidiary corporation of another state into a parent corporation organized in said state, with Northrop Grumman Information Technology, Inc., surviving the merger.

2.    Northrop Grumman Information Technology, Inc., shall assume all of the debts and obligations of Integic Corporation in exchange for the cancellation of all of the outstanding shares of Integic Corporation with no consideration paid therefore. Northrop Grumman Information Technology, Inc., shall succeed to all of the rights, privileges, powers and property, including, without limitation, all rights, privileges, franchises, patents, trademarks, licenses, registrations and other assets of every kind and description of Integic Corporation.

3.    The Certificate of Incorporation of Northrop Grumman Information Technology, Inc., shall not be altered or amended by this merger.

4.    The merger shall be effective on December 31, 2007 upon the filing of a Certificate of Ownership and Merger in the state of Delaware.

TWO

The Plan of Merger was adopted by unanimous written consent of the Board of Directors of each corporation constituent to this merger and by written consent of the sole shareholder of Integic Corporation.

EXHIBIT
B

IN WITNESS WHEREOF, the undersigned Secretary of each of the constituent corporations to this merger hereby declares that the facts herein sated are true as of 21st, day of December, 2007.

Integic Corporation
a Virginia corporation

By: *Kathleen M Salmas*
Kathleen M. Salmas
Secretary

Northrop Grumman Information Technology, Inc.,
a Delaware corporation

By: *Kathleen M Salmas*
Kathleen M. Salmas
Secretary

0336092 - 2

COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

AT RICHMOND, DECEMBER 27, 2007

The State Corporation Commission finds the accompanying articles submitted on behalf of

# NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.

comply with the requirements of law and confirms payment of all required fees. Therefore, it is ORDERED that this

## CERTIFICATE OF MERGER

be issued and admitted to record with the articles of merger in the Office of the Clerk of the Commission, effective December 31, 2007. Each of the following:

INTEGIC CORPORATION

is merged into NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC., which continues to exist under the laws of DELAWARE with the name NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC., and the separate existence of each non-surviving entity ceases.

STATE CORPORATION COMMISSION,

By *Mark C. Christie*

Commissioner

MERGACPT
CIS0352
07-12-26-0652

# Delaware

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF OWNERSHIP, WHICH MERGES:

"INTEGIC CORPORATION", A VIRGINIA CORPORATION,

WITH AND INTO "NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC." UNDER THE NAME OF "NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTIETH DAY OF DECEMBER, A.D. 2007, AT 9:54 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF OWNERSHIP IS THE THIRTY-FIRST DAY OF DECEMBER, A.D. 2007.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6264568

DATE: 12-26-07

0857847    8100M

071351342

You may verify this certificate online
at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 11:03 PM 12/20/2007
FILED 09:54 PM 12/20/2007
SRV 071351342 - 0857847 FILE

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

INTEGIC CORPORATION
a Virginia corporation

INTO

NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC.,
a Delaware corporation

NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST:  That this corporation was incorporated on the 28th day of July, 1978, pursuant to the General Corporation Law of the State of Delaware.

SECOND:  That this corporation owns all of the outstanding shares of each class of the stock of the following corporation:

| Name of corporation | State of Incorporation | Date of Incorporation |
| --- | --- | --- |
| Integic Corporation | Virginia | March 9, 1989 |

THIRD:  That this corporation, by the following resolutions of its Board of Directors, duly adopted by the unanimous written consent of its members, dated the 18 th day of December 2007, determined to merge into itself said Integic Corporation

WHEREAS, it is in the best interest of the Corporation that it merge into itself Integic Corporation, a Virginia corporation, and its wholly-owned subsidiary.

NOW, THEREFORE, BE IT RESOLVED, that Northrop Grumman Information Technology, Inc., merge into itself its wholly-owned subsidiary, Integic Corporation, and assume all of its debts and obligations;

1

RESOLVED FURTHER, that an authorized officer of the Corporation be and he hereby is authorized to prepare, execute and cause to be filed a Certificate of Ownership and Merger with the office of the Delaware Secretary of State.

RESOLVED FURTHER, that the merger shall be effective on **December 31, 2007.;**

FOURTH:  Anything herein or elsewhere to the contrary notwithstanding, this merger may be amended or terminated and abandoned by the Board of Directors of Northrop Grumman Information Technology, Inc. at any time prior to the time that this merger being filed with the Secretary of State becomes effective.

IN WITNESS WHEREOF, said Northrop Grumman Information Technology, Inc. has caused this Certificate to be signed by its Secretary, this _16_ th day of December, 2007.

Northrop Grumman Information Technology, Inc.
A Delaware corporation

By: _Kathleen M Salmas_
Kathleen M. Salmas
Its:  Secretary

2

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REC     **TXu 1—352—550**

EFFECTIVE DATE OF REGISTRATION

7/3/07
Month     Day     Year

Page 1 of 4

**SEPARATE CONTINUATION SHEET**

---

**1**   TITLE OF THIS WORK ▼
ImageXpress version 7

PREVIOUS OR ALTERNATIVE TITLES ▼
ImageXpress Photo, ImageXpress Standard, ImageXpress View, ImageXpress Professional

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared     Title of Collective Work ▼

If published in a periodical or serial give     Volume ▼     Number ▼     Issue Date ▼     On Pages ▼

---

**2**

**a**   NAME OF AUTHOR ▼
Pegasus Imaging Corporation

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of _____
Domiciled in **USA** }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?     ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
Computer Program

**NOTE**
Under the law, the author of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**   NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of _____
Domiciled in _____ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?     ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

**c**   NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of _____
Domiciled in _____ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?     ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

---

**3**

**a**   YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
2006 ◄ Year

**b**   DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month _____ Day _____ Year _____     Nation

---

**4**   COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
Pegasus Imaging Corporation
4001 North Riverside Drive
Tampa, FL 333603

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

See instructions before completing this space.

APPLICATION RECEIVED
JUL 03 2007
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUL 03 2007
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶ · Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
· See detailed instructions.     · Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

**EXHIBIT C**

EXAMINED BY ~~Filed~~ ~~12/15/2008~~                                                CFORM TX

CHECKED BY

☐ CORRESPONDENCE                                                      FOR
  ☐ Yes                                                            COPYRIGHT
                                                                    OFFICE
                                                                     USE
                                                                    ONLY

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work already been made in the Copyright Office?          **5**
☐ Yes  ☒ No  If your answer is 'Yes'  why is another registration being sought?(Check appropriate box ) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form
b ☐ This is the first application submitted by this author as copyright claimant
c ☐ This is a changed version of the work  as shown by space 6 on this application
If your answer is 'Yes'  give  Previous Registration Number ▶ _____        Year of Registration ▶ _____

**DERIVATIVE WORK OR COMPILATION.**                                                   **6**  a
Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates ▼

                                                                                 See instructions
                                                                                 before completing
Material Added to This Work  Give a brief  general statement of the material that has been added to this work and in which copyright is claimed ▼   this space
                                                                                        b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office  give name and number of Account   **7**  a
Name ▼                                                      Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent  Name/Address/Apt/City/State/Zip ▼          b

Evelyn A  Ashley, Esq
600 West Peachtree St , Suite 1910
Atlanta, GA  30308

Area code and daytime telephone number ▶ (404) 898-2912              Fax number ▶ (404) 898-2901

Email ▶  eashley@trusted-counsel com

**CERTIFICATION\*** I, the undersigned  hereby certify that I am the       ☐ author                             **8**
                                         Check only one ▶  ☐ other copyright claimant
                                                           ☐ owner of exclusive right(s)
of the work identified in this application and that the statements made    ☒ authorized agent of  Pegasus Imaging Corporation
by me in this application are correct to the best of my knowledge                            Name of author or other copyright claimant, or owner of exclusive right(s) ▲

Typed or printed name and date ▼ If this application gives a date of publication in space 3  do not sign and submit it before that date

Evelyn A  Ashley, Esq                                                Date ▶ June 29, 2007

          Handwritten signature ▼

          Eva

Certificate          Name ▼                                    ● Complete all necessary spaces           **9**
will be      Evelyn A  Ashley                                   ● Sign your application in space 8
mailed in    _____
window       Number/Street/Apt ▼                               1  Application form
envelope     600 West Peachtree St , Ste 1910                 2  Nonrefundable filing fee in check or money
to this      _____             order payable to Register of Copyrights
address      City/State/Zip ▼                                 3  Deposit material
             Atlanta, GA 30308                                _____
                                                              Library of Congress
                                                              Copyright Office
                                                              101 Independence Avenue SE
                                                              Washington  DC 20559-6222

17 USC §506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 or in any written statement filed in connection
with the application shall be fined not more than $2,500

Form TX—Full  Rev 11/2006  Print 11/2006—20,000  Printed on recycled paper                              U S  Government Printing Office 2006—xxx-xxx/xxx

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Mary beth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TXu 1-361-085**

EFFECTIVE DATE OF REGISTRATION

7 / 3 / 07
Month    Day    Year

RATE CONTINUATION SHEET.

---

**1**

TITLE OF THIS WORK ▼
ImageXpress version 8

PREVIOUS OR ALTERNATIVE TITLES ▼
ImageXpress Photo; ImageXpress Standard; ImageXpress View; ImageXpress Document

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give:  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

**a**  NAME OF AUTHOR ▼
Pegasus Imaging Corporation

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer Program

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a**  YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
2006
◀ Year  This information must be given in all cases.

**b**  DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month ▶    Day ▶    Year ▶
ONLY if this work has been published.    ◀ Nation

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Pegasus Imaging Corporation
4001 North Riverside Drive
Tampa, FL 333603

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

APPLICATION RECEIVED
JUL 03 2007
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

JUL 03 2007
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.   • See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ____ pages

EXAMINED BY 06/29/2008    Page 4 of FORM TX

CHECKED BY

☐ CORRESPONDENCE
  Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

**5**

a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▶                    **Year of Registration** ▶

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**6**

See instructions
before completing
this space.

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                        **Account Number** ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

**b**

Evelyn A. Ashley, Esq.
600 West Peachtree St., Suite 1910
Atlanta, GA 30308

Area code and daytime telephone number ▶ (404) 898-2912            Fax number ▶ (404) 898-2901
Email ▶
eashley@trusted-counsel.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of _Pegasus Imaging Corporation_

**8**

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Evelyn A. Ashley, Esq.                                Date ▶ June 29, 2007

Handwritten signature ▼

_Evelyn_

**9**

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Evelyn A. Ashley
Number/Street/Apt ▼
600 West Peachtree St., Ste 1910
City/State/Zip ▼
Atlanta, GA 30308

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6222

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REG **TXu 1-352-550**

EFFECTIVE DATE OF REGISTRATION

7/3/07
Month  Day  Year

SEPARATE CONTINUATION SHEET

---

**1**

**TITLE OF THIS WORK ▼**
ImageXpress version 7

**PREVIOUS OR ALTERNATIVE TITLES ▼**
ImageXpress Photo, ImageXpress Standard, ImageXpress View, ImageXpress Professional

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

**a** NAME OF AUTHOR ▼
Pegasus Imaging Corporation

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _U S A_
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
Computer Program

**NOTE**
Under the law, the author of a work made for hire is generally the employer, not the employee (see instructions). For any part of this work that was made for hire check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼

---

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
2006 ◀ Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month ▶    Day ▶    Year ▶
ONLY if this work has been published.
Nation

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Pegasus Imaging Corporation
4001 North Riverside Drive
Tampa, FL 333603

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JUL 03 2007
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUL 03 2007
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

**EXHIBIT C**

MORE ON BACK ▶ Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.    Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

EXAMINED BY     Filed 01/16/2008     Page 2 of FORM TX

CHECKED BY

☐ CORRESPONDENCE
   ☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form.
b ☐ This is the first application submitted by this author as copyright claimant.
c ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▶                Year of Registration ▶

**6** DERIVATIVE WORK OR COMPILATION
a Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

See instructions
before completing
this space

b Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**7** DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
a Name ▼                                          Account Number ▼

b CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

   Evelyn A. Ashley, Esq
   600 West Peachtree St, Suite 1910
   Atlanta, GA 30308

Area code and daytime telephone number ▶ (404) 898-2912                Fax number ▶ (404) 898-2901
Email ▶ eashley@trusted-counsel.com

**8** CERTIFICATION* I, the undersigned, hereby certify that I am the
   Check only one ▶  ☐ author
                      ☐ other copyright claimant
                      ☐ owner of exclusive right(s)
                      ☒ authorized agent of _Pegasus Imaging Corporation_
                                            Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Evelyn A. Ashley, Esq                                          Date ▶ June 29, 2007

Handwritten signature ▼
   Eva

**9** Certificate
will be
mailed in
window
envelope
to this
address

Name ▼
   Evelyn A. Ashley

Number/Street/Apt ▼
   600 West Peachtree St, Ste 1910

City/State/Zip ▼
   Atlanta, GA 30308

Complete all necessary spaces
Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6222

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form TX—Full   Rev: 11/2006   Print: 11/2006—xx,xxx   Printed on recycled paper                U.S. Government Printing Office: 2006-xx-xxx/xx,xxx

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Mary Beth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TXu 1–361–085**

EFFECTIVE DATE OF REGISTRATION

7/3/07

Month     Day     Year

RATE CONTINUATION SHEET.

---

**1**

TITLE OF THIS WORK ▼
ImageXpress version 8

PREVIOUS OR ALTERNATIVE TITLES ▼
ImageXpress Photo; ImageXpress Standard; ImageXpress View; ImageXpress Document

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼     Number ▼     Issue Date ▼     On Pages ▼

---

**2**

**a** NAME OF AUTHOR ▼
Pegasus Imaging Corporation

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of �_____
Domiciled in ▶ U.S.A.

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer Program

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of �_____
Domiciled in ▶_____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶_____
Domiciled in ▶_____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED   This information must be given
2006   ◀ Year   in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information   Month ▶_____   Day ▶_____   Year ▶_____   ◀ Nation
ONLY if this work has been published.

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Pegasus Imaging Corporation
4001 North Riverside Drive
Tampa, FL 333603

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
JUL 03 2007
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
JUL 03 2007
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶   • Complete all applicable spaces (numbers 5–9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

EXAMINED BY ~~~~~~~~~~~~~~~~~~~    Page 4 of    FORM TX

CHECKED BY

☐ CORRESPONDENCE
  Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▶            Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**
**a**

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                            Account Number ▼

**7**
**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

Evelyn A. Ashley, Esq.
600 West Peachtree St., Suite 1910
Atlanta, GA 30308

**b**

Area code and daytime telephone number ▶ (404) 898-2912          Fax number ▶ (404) 898-2901

Email ▶  eashley@trusted-counsel.com

**CERTIFICATION** I, the undersigned, hereby certify that I am the
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of Pegasus Imaging Corporation

Check only one ▶

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Evelyn A. Ashley, Esq.                                    Date▶ June 29, 2007

Handwritten signature ▼

~~~~~~~~~~~~~~~~

**Certificate**
**will be**
**mailed in**
**window**
**envelope**
**to this**
**address:**

Name ▼
Evelyn A. Ashley

Number/Street/Apt ▼
600 West Peachtree St., Ste 1910

City/State/Zip ▼
Atlanta, GA 30308

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6222

**9**

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Trademark Electronic Search System (TE



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 23 04:07:17 EDT 2007*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the*

*Internet Browser to return to TESS)*

# IMAGXPRESS

| | |
|---|---|
| Word Mark | IMAGXPRESS |
| Goods and Services | IC 009. US 021 023 026 036 038. G & S: Computer graphics software; computer software to enhance the visual capabilities of multimedia applications, namely, for the integration of graphics, still images and moving pictures; computer software for the restoration, enhancement and editing of digital images; communications software for transmitting and delivering digital images; computer software development tools, data compression software, namely, digital imaging data and video data; computer software for use in digital imaging, digital photography, document imaging, document scanning, image editing, visual presentations, graphics, computer aided design and internet imaging applications, all of the foregoing for business and personal use; computer software for use in medical, photo and document imaging. FIRST USE: 19980501. FIRST USE IN COMMERCE: 19980501 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 78409451 |
| Filing Date | April 28, 2004 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1A |



EXHIBIT
D

Trademark Electronic Search System (TESS)

| | |
|---|---|
| Owner | (APPLICANT) Pegasus Imaging Corporation CORPORATION FLORIDA Suite 200 4522 Spruce Street Tampa FLORIDA 33607 |
| Attorney of Record | Susan T. Craighead, Esq. |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

TESS HOME  NEW USER  STRUCTURED  FREE FORM  Browse Dict  SEARCH OG  Top  HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

Reg. No. 3,155,452

## United States Patent and Trademark Office

Registered Oct. 17, 2006

TRADEMARK
PRINCIPAL REGISTER

# PEGASUS

PEGASUS IMAGING CORPORATION (FLORIDA CORPORATION)
4522 SPRUCE STREET
SUITE 200
TAMPA, FL 33607

FOR: COMPUTER GRAPHICS SOFTWARE; COMPUTER SOFTWARE TO ENHANCE THE VISUAL CAPABILITIES OF MULTIMEDIA APPLICATIONS, NAMELY, FOR THE INTEGRATION OF GRAPHICS, STILL IMAGES AND MOVING PICTURES; COMPUTER SOFTWARE FOR THE RESTORATION, ENHANCEMENT AND EDITING OF DIGITAL IMAGES; COMMUNICATIONS SOFTWARE FOR TRANSMITTING AND DELIVERING DIGITAL IMAGES; COMPUTER SOFTWARE DEVELOPMENT TOOLS, DATA COMPRESSION SOFTWARE,

NAMELY, DIGITAL IMAGING DATA AND VIDEO DATA; COMPUTER SOFTWARE FOR USE IN DIGITAL IMAGING, DIGITAL PHOTOGRAPHY, DOCUMENT IMAGING, DOCUMENT SCANNING, VISUAL PRESENTATIONS, GRAPHICS, COMPUTER AIDED DESIGN AND SCREENSAVERS, ALL OF THE FOREGOING FOR BUSINESS AND PERSONAL USE; COMPUTER SOFTWARE FOR USE IN MEDICAL IMAGING, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 9-30-1991; IN COMMERCE 9-30-1991.

SER. NO. 76-301,777, FILED 8-20-2001.

CAROLYN CATALDO, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

Reg. No. 3,155,453

## United States Patent and Trademark Office

Registered Oct. 17, 2006

## TRADEMARK
### PRINCIPAL REGISTER



PEGASUS IMAGING CORPORATION (FLORIDA CORPORATION)
4522 SPRUCE STREET, SUITE 200
TAMPA, FL 33607

FOR: COMPUTER GRAPHICS SOFTWARE; COMPUTER SOFTWARE TO ENHANCE THE VISUAL CAPABILITIES OF MULTIMEDIA APPLICATIONS, NAMELY, FOR THE INTEGRATION OF GRAPHICS, STILL IMAGES AND MOVING PICTURES; COMPUTER SOFTWARE FOR THE RESTORATION, ENHANCEMENT AND EDITING OF DIGITAL IMAGES; COMMUNICATIONS SOFTWARE FOR TRANSMITTING AND DELIVERING DIGITAL IMAGES; COMPUTER SOFTWARE DEVELOPMENT TOOLS, DATA COMPRESSION SOFTWARE, NAMELY, DIGITAL IMAGING DATA AND VIDEO DATA; COMPUTER SOFTWARE FOR USE IN DIGITAL IMAGING, DIGITAL PHOTOGRAPHY, DOCUMENT IMAGING, DOCUMENT SCANNING, VISUAL PRESENTATIONS, GRAPHICS, COMPUTER AIDED DESIGN AND SCREENSAVERS, ALL OF THE FOREGOING FOR BUSINESS AND PERSONAL USE; COMPUTER SOFTWARE FOR USE IN MEDICAL IMAGING, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 9-30-1991; IN COMMERCE 9-30-1991.

SER. NO. 76-304,974, FILED 8-27-2001.

CAROLYN CATALDO, EXAMINING ATTORNEY