UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | |
|---|---|
| PEGASUS IMAGING CORPORATION, a Florida Corporation<br><br>　　Plaintiff and<br>　　Counterclaim-Defendant,<br><br>　　v.<br><br>NORTHROP GRUMMAN CORPORATION, a Delaware Corporation<br><br>　　Defendant, and<br><br>NORTHROP GRUMMAN INFORMATION TECHNOLOGY, a Delaware Corporation<br><br>　　Defendant and Counterclaimant. | Case No. 8:07-cv-01937-T-27EAJ |

**MEMORANDUM IN OPPOSITION TO PEGASUS'S MOTION TO DISMISS
NORTHROP GRUMMAN INFORMATION TECHNOLOGY'S COUNTERCLAIM**

Defendant and counterclaimant Northrop Grumman Information Technology ("NGIT") submits this memorandum of law in opposition to plaintiff and counterclaim-defendant Pegasus Corporation's ("Pegasus") motion to dismiss NGIT's counterclaim for breach of contract. Pegasus's motion to dismiss misreads the relevant case law, and rests on Pegasus's dispute of the key facts NGIT alleges in support of its counterclaim. The motion should be denied.

## BACKGROUND

As the Court is aware, this case arises out of defendant-counterclaimant NGIT's development of a military medical records system, known as "AHLTA," for the Defense Department. NGIT Counterclaim (D.E. 86) ¶¶ 7-8. To help fulfill the Defense Department's request that doctors using AHLTA have the ability to annotate images in patients' records through use of a "drawing tool," NGIT (through its predecessor, Integic Corporation) downloaded two copies of ImagXpress, an imaging toolkit software package owned by plaintiff and counterclaim-defendant Pegasus. *Id*. at ¶¶ 9-12.[1] Upon each download, NGIT paid Pegasus the required fee of approximately $1,400 and agreed to the terms of a click-wrap license that governs the use of ImagXpress ("the License Agreement"). *Id*. (The License Agreement is attached as Exhibit "A" to Pegasus's Second Amended Complaint (D.E. 60)). The License Agreement provides the licensee broad software development rights, as well as rights to distribute to end-users pieces of ImagXpress (known in the software development field as "runtimes"), that the licensee incorporates into the newly developed software. *Id*. at ¶¶ 11-12. As alleged in the Counterclaim, NGIT at all times abided by all requirements of the License Agreement. *Id*. at ¶ 14.

In late 2006—more than two years after NGIT had first downloaded ImagXpress—Pegasus began to assert that NGIT's use of ImagXpress was in violation of the License Agreement, and demanded that NGIT pay Pegasus additional fees of more than $1 million per year to continue its use of the product. *Id*. at ¶¶ 15-17. In an attempt to extract from NGIT these additional fees that were not called for under the License Agreement, Pegasus asserted that

---

[1] For simplicity's sake, we refer to both Integic and NGIT (Integic's successor-in-interest) as "NGIT."

NGIT's use of ImagXpress was now an unlicensed infringement that must cease immediately—unless NGIT agreed to Pegasus's new fee demands. *Id*. at ¶ 19.

In fact, no version of AHLTA that included a drawing tool function had ever been deployed to the field by that time. *Ibid*. Accordingly, with Pegasus having repudiated the terms of its own License Agreement, NGIT disabled the ImagXpress drawing tool that was under development in AHLTA, and replaced that functionality through use of a similar product owned by a company called MediComp—all at significant cost to NGIT. *Id*. at ¶¶ 20-21. Still not content, in late 2007, Pegasus sued NGIT and its second-level corporate parent, Northrop Grumman Corporation, alleging breach of contract, copyright infringement, and a variety of additional state and federal claims. On September 18, 2009, NGIT answered and filed the present counterclaim for breach of contract.

As alleged in the counterclaim, Pegasus's insistence that NGIT pay enormous additional fees, not called for under the License Agreement, lest it be deemed an infringer by Pegasus for using ImagXpress as allowed under the License Agreement, constituted a repudiation and breach of the License Agreement. *Id*. at ¶¶ 22-29. Pegasus now moves to dismiss the counterclaim on two grounds; neither one has merit.

First and foremost, Pegasus argues that it cannot have repudiated any of its obligations under the License Agreement because it had completed performance of those obligations the moment NGIT downloaded the software. Thus, Pegasus argues, "there was no further obligation for Pegasus to perform and no anticipatory repudiation can be found." Pegasus Motion to Dismiss (D.E. 88) ("Br.") at 4. That is wrong. The obligation of a licensor of intellectual property is not simply to provide access to the property; it is also to refrain from charging the

3

licensee with infringement. NGIT alleges that Pegasus unambiguously repudiated that obligation, and thereby states a valid breach of contract claim.

Second, and apparently in the alternative, Pegasus insists that NGIT's allegations are just not true. Whereas NGIT alleges that Pegasus declared that that NGIT was infringing Pegasus's copyrights (Counterclaim ¶ 16), and must either pay millions in addition feels or else stop using the licensed software (*id*. at ¶ 19), Pegasus now says that it was merely "pos[ing] . . . questions" to NGIT in an "attempt to resolve" a dispute (Br. 5). "[S]imply inquir[ing]," Pegasus points out, does not amount to a repudiation. *Id*. at 6. But that is not what NGIT alleges Pegasus did. Pegasus certainly is free to contest at trial NGIT's evidence of Pegasus's unequivocal repudiation, but a dispute over the facts is no basis for a motion to dismiss.

## ARGUMENT

I.  **Pegasus Cannot Avoid Liability For Breach On The Theory That It Had No Further Performance Obligation To NGIT Once NGIT Downloaded The Pegasus Software**

"Anticipatory repudiation occurs when one party unequivocally and absolutely refuses to perform the contract." *Hap* v. *Toll Jupiter Ltd. Partnership*, No. 07-81027-CIV, 2009 WL 187938, at *11 (S.D. Fla. Jan. 27, 2009) (citing *Progressive Exp. Ins. Co., Inc.* v. *Menendez*, 979 So. 2d 324, 329 (Fla. Dist. Ct. App. 2008)).[2] In this case, NGIT alleges that Pegasus breached its obligation under the License Agreement when it "made clear and unequivocal statements that it would treat [NGIT's] use of ImagXpress as an infringement unless [NGIT] paid additional

---

[2] *See also Metric Systems Corp.* v. *McDonnell Douglas Corp.*, 850 F. Supp. 1568, 1584 (N.D. Fla. 1994) (anticipatory repudiation is a "positive, definite, unconditional, and unequivocal manifestation of intent . . . not to render the promised performance"); *Peachtree Cas. Ins. Co.* v. *Walden*, 759 So. 2d 7, 8 (Fla. Dist. Ct. App. 2000) ("[A] definite and unconditional repudiation of the contract by a party thereto, communicated to the other, is a breach of the contract.") (quoting CORBIN ON CONTRACTS § 959 (1951)); *Progressive Exp. Ins. Co., Inc.* v. *Menendez*, 979 So. 2d 324, 329 (Fla. Dist. Ct. App. 2008) (same).

amounts totaling hundreds of times more than the stated cost of ImagXpress." Counterclaim ¶ 27.

Pegasus's principal argument for dismissal is that its conduct could not have been a repudiation of any obligation under the Agreement because Pegasus already had "performed all obligations thereunder" by the time "the alleged anticipatory repudiation occurred." Br. 3. *See id.* at 6 ("Pegasus has and had prior to the point in time alleged by NGIT where the alleged anticipatory repudiation occurred fully performed under the Agreement."). In particular, Pegasus says, it had "fully performed" its obligations "upon [NGIT's] downloading" of ImagXpress, and thus there was "no further obligation for Pegasus to perform." *Id.* at 4. That argument betrays a fundamental misapprehension of the nature of a license. It confuses a *license* with a *sale*.

In a sales contract, the seller's performance generally is complete as soon as he turns over the subject property or title. *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "sale"). A license, by contrast, "is an executory contract," *In re Kmart Corp.*, 290 B.R. 614, 618 (Bankr. N.D. Ill. 2003), in that it "imposes a number of ongoing performance obligations on the part of the parties," *In re Exide Technologies*, 340 B.R. 222, 238 (Bankr. D. Del. 2006). Thus, the licensee (here, NGIT) has an ongoing obligation to abide by the terms of the license. For its part, the licensor (here, Pegasus) "owes significant continued performance to the licensee: it must continue to refrain from suing it for infringement, since a … license is, in essence 'a mere waiver of the right to sue' the licensee for infringement." *In re CFLC, Inc.*, 89 F.3d 673 (9th Cir. 1996) (quoting *De Forest Radio Telephone & Telegraph Co.* v. *United States*, 273 U.S. 236, 242 (1927)). Accordingly, it is not so (as Pegasus claims) that Pegasus's performance was complete the moment NGIT downloaded ImagXpress. If that were true, a licensor of intellectual property

5

would have a claim for infringement against its licensee as soon as the licensee began to use the licensed product.

In this case, Pegasus committed an anticipatory repudiation of the License when it announced, without justification, that NGIT's use was unlicensed, and demanded that NGIT either stop using ImagXpress, or else pay millions in additional fees that were not called for under the License Agreement. *See* Counterclaim ¶¶ 17, 19, 27. The fact that ImagXpress had been delivered to NGIT two years before that is irrelevant. *See Geneva Inter. Corp.* v. *Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993 (N.D. Ill. 2009) (licensee's claim that licensor, without justification, terminated licensee's exclusive right to sell product stated a claim for anticipatory breach of license). Pegasus's motion to dismiss on this theory is baseless.

## II. The Counterclaim Adequately Alleges That Pegasus's Repudiation Was Absolute And Unequivocal

As noted above, NGIT asserts in its counterclaim that Pegasus wrongfully demanded payment of substantial fees, beyond those required under the Agreement, lest Pegasus charge NGIT with infringement for doing what NGIT was contractually entitled to do. Counterclaim ¶¶ 17-19, 27. "[W]here a party wrongfully states that he will not perform at all unless the other party consents to a modification of his contract rights, the statement is a repudiation." Restatement (Second) of Contracts § 250 cmt. d (1979). *See also id.* cmt. b ("Language that under a fair reading amounts to a statement of intention not to perform except on conditions which go beyond the contract constitutes a repudiation."); Fla. Stat. § 672.610 cmt. n. 2 (same); *Validsa* v. *PDVSA Serv. Inc.*, 632 F. Supp. 2d 1219, 1238 (S.D. Fla. 2009) ("[P]roposed modifications are themselves repudiations of the Contracts.").

Pegasus argues that, even if it had not already performed all of its contractual obligations by the time these events occurred, the counterclaim should be dismissed because it

mischaracterizes what Pegasus did and said. Thus, whereas NGIT alleges that Pegasus made "repeated and unfounded demands that [NGIT] must stop using ImagXpress immediately" unless it met Pegasus's proposed new payment schedule, Pegasus claims that it was merely "inquir[ing]," "ascertain[ing]" (Br. 6), "pos[ing] questions," making "indefinite statements" (Br. 5), and generally "working and communicating with NGIT towards a resolution" (Br. 6). Again, Pegasus can say that, and is free to try to prove at trial its version of events, but a Rule 12 motion is not the place to resolve such factual disputes. *See*, *e.g.*, *Garcia* v. *Chase Manhattan Bank*, 735 F.2d 645, 648 (2d Cir. 1984) ("Whether [the defendant] repudiated its obligations is a question of fact."); *Battista* v. *Lebanon Trotting Assoc.*, 538 F.2d 111, 118 (6th Cir. 1976) ("In our opinion [whether a letter effected repudiation] is a factual question for the jury to determine."); *Contractors Health & Welfare Plan* v. *Harkins Constr. & Equipment Co.*, 733 F.2d 1321, 1326 (8th Cir. 1984) ("Whether sufficient notice of [repudiation] has been given raises a question of fact that requires an examination of the conduct of all parties."); *United Brotherhood of Carpenters* v. *Endicott Enterprises, Inc.*, 806 F.2d 918, 922 (9th Cir. 1986) ("[T]he question whether a party has repudiated is one of fact.").

The principal case relied upon by Pegasus (Br. 6-7), *Madison Nat. Life Ins. Co., Inc.* v. *Polysystems*, 618 F. Supp. 2d 972 (W.D. Wis. 2009), is not to the contrary. In that case, the plaintiff software licensee requested that the defendant licensor allow the plaintiff to use the software for "new business" that *all agreed* "was not covered by the parties' [existing] agreement." *Id*. at 975. The plaintiff then rejected the defendant licensor's proposed terms for an addendum that would have allowed the plaintiff to make this new use of the software. The plaintiff ultimately stopped all use of the software and demanded a refund. *Id*. at 976. When the defendant refused, the plaintiff licensee sued for breach.

7

Though there was no question that the plaintiff had *stated a claim* for anticipatory repudiation, the Court entered summary judgment for the defendant licensor, but only because the "undisputed facts" were that the defendant "never clearly and unequivocally manifested an intent not to perform" under the existing contract. *Id*. at 977. To the contrary, the Court found, it was the *plaintiff* that had requested a substantial "change from the initial license agreement." *Id*. at 975. Although the parties failed to agree on the terms for extending the existing license to cover *additional* types of use, it was undisputed that the defendant never "ask[ed] to change the [existing] agreement by requiring new licensing fees." *Id*. at 979.

*Polysystems* is of no help to Pegasus. Unlike in that case, NGIT alleges that it used (and intended to continue using) ImagXpress only in accordance with the terms of the Agreement. And unlike in *Polysystems*, it was Pegasus, the licensor, that unilaterally sought to "change the agreement by requiring new licensing fees." *Id*. *See Southern Crane Rentals, Inc.* v. *City of Gainesville*, 429 So.2d 771, 773 (Fla. Dist. Ct. App. 1983) (a party's unilateral cancellation of a contract constituted an anticipatory repudiation). Again, Pegasus may choose to contest these allegations at the summary judgment stage (as the defendant did in *Polysystems*), but the case law in no way supports dismissal for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Pegasus's Motion to Dismiss NGIT's counterclaim should be denied.

Case No. 8:07-cv-01937-T-27EAJ

Respectfully submitted,

Date:  October 28, 2009

/s/ Ariel N. Lavinbuk
Gary A. Orseck (Admitted *pro hac vice*)
Ariel N. Lavinbuk (Admitted *pro hac vice*)
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, NW, Suite 411L
Washington, DC 20006
Telephone: (202) 775-4504
Fax: (202) 775-4510
alavinbuk@robbinsrussell.com

Lawrence B. Lambert
Fla. Bar No. 0032565
LASH & GOLDBERG LLP
Bank of America Tower, Suite 1200
100 S.E. 2nd Street
Miami, Florida 33131
PH: (305) 347-4040
Fax: (305) 347-4050
llambert@lashgoldberg.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of the electronic filing to the following: David D. Ferrentino, Esq., David Forziano, Esq., Donald W. Stanley, Jr., Esq., and Richard Anthony Harrison, Esq., counsel for Plaintiffs.

/s/ Lawrence B. Lambert
Lawrence B. Lambert
Fla. Bar No. 0032565
*Local Counsel for Defendants*
**LASH & GOLDBERG LLP**
Bank of America Tower, Suite 1200
100 S.E. 2nd Street
Miami, Florida 33131
PH: (305) 347-4040
Fax: (305) 347-4050
llambert@lashgoldberg.com

9