UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEGASUS IMAGING CORP.,

    Plaintiff,

vs.                                      Case No. 8:07-CV-1937-T-27EAJ

NORTHROP GRUMMAN CORP., et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiff's motion to dismiss Northrop Grumman Information Technology, Inc.'s counterclaim (Dkt. 88) and Plaintiff's motion to strike Northrop Grumman Corporation's affirmative defenses (Dkt. 94). Upon consideration, the motions are **DENIED**.

*Background*

Pegasus Imaging Corporation filed this action, alleging that Northrop Grumman Information Technology, Inc. (NGIT) and its predecessor in interest, Integic, used Pegasus's ImagXpress software in a manner which exceeded the scope of the parties' license agreement. Pegasus contends that Northrop Grumman Corporation (NGC) is liable for NGIT's actions because it owns NGIT and approved NGIT's use of the software.

NGIT filed a counterclaim, contending that Pegasus committed an anticipatory repudiation of the license agreement. According to NGIT, Pegasus demanded that NGIT and Integic enter into an expanded license agreement and pay additional fees, notwithstanding that their use of the software complied with the license agreement. Ultimately, Pegasus made "repeated and unfounded demands that Integic must stop using ImagXpress immediately unless it agreed to Pegasus's proposed new expanded license." (Dkt. 86, Countercl. ¶ 19). As a result, Integic and NGIT removed the ImagXpress software and installed an alternative product.

NGC based several affirmative defenses on the same facts. In particular, NGC contended that Pegasus's actions constituted a breach or anticipatory repudiation of the license agreement. NGC further contended that the removal of ImagXpress following Pegasus's demands constituted an accord and satisfaction of any obligations incurred for the alleged impermissible use of the software.

Pegasus has moved to dismiss NGIT's counterclaim and to strike NGC's first, eighth, and ninth affirmative defenses. Pegasus argues that the facts do not support a breach or anticipatory repudiation because it fully performed all contractual duties and never manifested a clear intent to repudiate the license agreement. Pegasus argues that NGC's accord and satisfaction defense should be stricken because NGC failed to plead sufficient facts.

*Standard*

Fed. R. Civ. P. 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed allegations are not required, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009). In evaluating a motion to dismiss under Rule 12(b)(6), "the pleadings are construed broadly." *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). All allegations are taken as true and viewed in the light most favorable to the party that filed the pleading. *See id.*

Fed. R. Civ. P. 8(b)(1) requires affirmative defenses to be "state[d] in short and plain terms." Although detailed facts need not be pled, the defense must be supported by more than "bare bones conclusory allegations." *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (quotation omitted). The Court has discretion to strike an affirmative defense that is "insufficient as a matter of law." *Id.*; *see* Fed. R. Civ. P. 12(f). "A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." *Morrison*, 434 F. Supp. 2d at 1318 (quoting *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)).

*Analysis*

A. *Anticipatory repudiation*

A claim for anticipatory repudiation arises where a party renounces his or her contractual duties before the time prescribed for performance. *See Hospital Mortgage Group v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182 (Fla. 1982). Pegasus argues that there were no contractual obligations to repudiate because its duties were fully performed upon delivering a copy of ImagXpress. But Pegasus's duties did not cease when it delivered the software. Pegasus had an ongoing obligation to allow Integic and NGIT to continue using the software throughout the term of the license agreement. *See In re Chapin Revenue Cycle Mgmt., LLC*, 343 B.R. 728, 730 (Bankr. M.D. Fla. 2006) (end-user license agreement was executory contract because software developer "ha[d] an obligation to allow the continued use of the Software by the Debtor"); *cf. Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir. 1997) ("[i]mplicit . . . promise not to sue for copyright infringement" was part of nonexclusive license). The allegation that Pegasus refused to permit the continued use of the software is therefore sufficient to state a claim for anticipatory repudiation of the license agreement.

Pegasus contends that it did not repudiate the license agreement but merely stated that NGIT's and Integic's use of the software constituted a breach. Pegasus relies on *Madison Nat'l Life Ins. Co., Inc. v. PolySystems, Inc.*, 618 F. Supp. 2d 972 (W.D. Wis. 2009). In *Polysystems*, the district court granted summary judgment, finding defendant did not manifest a clear intent not to perform when it stated that plaintiff's proposed use of its software would violate the parties' license agreement. 618 F. Supp. 2d at 977. In particular, there was no evidence that defendant refused to perform any contractual obligations. *Id.* at 978-79. At most, the statements that plaintiff's proposed use would constitute a breach were "indefinite" and left "uncertain" how defendant would respond. *Id.* at 979. By contrast, Pegasus demanded that NGIT and Integic cease using the software altogether unless they entered into an expanded license agreement and paid additional fees. These allegations,

3

taken in the light most favorable to NGIT, leave no uncertainty that Pegasus refused to perform its obligation to allow the continued use of the software.

In sum, NGIT alleged that its and Integic's use of the software was permitted by the license agreement. Notwithstanding, Pegasus demanded that NGIT and Integic "stop using ImagXpress immediately unless [they] agreed to Pegasus's proposed new expanded license" and paid additional fees. (Countercl. ¶ 19). "The law is clear that where one party to the contract arbitrarily demands performance not required by the contract and couples this demand with a refusal to further perform unless the demand is met, the party has anticipatorily repudiated the contract . . . ." *Twenty-Four Collection, Inc. v. M. Weinbaum Constr., Inc.*, 427 So. 2d 1110, 1111 (Fla. 3d DCA 1983). NGIT has stated a claim for anticipatory repudiation that is plausible on its face.

B.   *Accord and satisfaction*

An accord and satisfaction arises (1) when there is an existing dispute between the parties concerning an obligation, (2) the parties mutually intend to effect a settlement by a superseding agreement, and (3) one party tenders, and the other accepts, performance of the new agreement in full satisfaction and discharge of the prior disputed obligation. *See Republic Funding Corp. of Fla. v. Juarez*, 563 So. 2d 145, 146 (Fla. 5th DCA 1990). Pegasus stated that NGIT's and Integic's use of the software would be treated as an infringement "unless NGIT paid additional amounts totaling hundreds of times more than the stated cost of ImagXpress or else removed Pegasus [sic] software from AHLTA." (Dkt. 89, First Affirm. Defense). NGC alleged that NGIT satisfied this demand by removing the software. (*Id.*).

Pegasus argues that NGC did not allege sufficient facts to support an accord and satisfaction. "[T]he question of whether the parties intended to effect a settlement of an existing dispute by entering into a superseding agreement is generally a question of fact." *Wolowitz v. Thoroughbred Motors, Inc.*, 765 So. 2d 920, 923 (Fla. 2d DCA 2000) (quotation omitted). While accord and satisfaction may or may not ultimately constitute a defense to Pegasus's action, the facts remain to

be developed. The sufficiency of this defense is therefore not properly tested by a motion to strike under Rule 12(f).

*Conclusion*

Accordingly, Plaintiff's motion to dismiss Northrop Grumman Information Technology, Inc.'s counterclaim (Dkt. 88) and Plaintiff's motion to strike Northrop Grumman Corporation's affirmative defenses (Dkt. 94) are **DENIED**. Pegasus shall answer Northrop Grumman Information Technology's counterclaim within fourteen (14) days.

**DONE AND ORDERED** this 14th day of April, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record